## WOOD v. LORD.

Under the homestead act of 1851, the family homestead is exempt from attachment only as against debts accruing since January 1, 1852, without regard to the time such homestead was acquired.

A promissory note given since January 1, 1852, in renewal of a debt created before, is still privileged as against the homestead.

Therefore a mortgage by a husband of the homestead, to secure such a debt, is valid as against his widow after his decease.

The fact that the wife of such mortgagor was compelled by the mortgagee to leave the homestead during her husband's life, would not deprive her of the right of homestead after his death; neither would the fact that the husband paid rent to the mortgagee for the same premises.

If the wife, after being compelled to leave the old homestead, acquired a new one, which she continued to occupy after her husband's death, she would lose her right to the old homestead, unless her occupation of the new one was merely temporary, with an intention to return to the other.

PETITION, by Arabella S. Wood against Catharine M. Lord, for homestead. It is alleged in the petition that the plaintiff is the widow of John B. Wood, who died August 15, 1870 ; that she was married to him June 27, 1827 ; that Hill & Buffum conveyed to said John in fee simple a parcel of land (described in the petition) in Somersworth, with the buildings thereon, May 3, 1853 ; that immediately after the conveyance, she and said John entered into the possession of said premises, and continued to occupy them. as a family homestead ; that she so occupied said premises until March 4, 1861, when she was ejected by the defendant ; that since that time the plaintiff has been prevented from occupying the premises by the defendant who is in possession, claiming the premises by virtue of a conveyance from said John alone ; and that no release or waiver of any homestead right was ever made by the plaintiff and said John, or by the plaintiff alone. The defendant pleaded first, that the plaintiff, at the date of the petition, was not and is not entitled to any part or share of the premises as a homestead. The defendant's second plea is as follows :

" That John B. Wood, in said petition mentioned, by his deeds,—one, dated November 21, 1853, and recorded July 22, 1854, on Strafford county records, book 215, page 281, the other dated July 22, 1854, and recorded the same day on book 215, page 284, of the same records,—conveyed in fee and mortgage the premises described in said petition to said Catharine M., by the name of Catharine M. Wood (she being then unmarried), and to one Charlotte M. Wood, to secure the payment of the following notes, all of which are specified in each mortgage, viz. : Note dated February 15, 1850, for $700, signed by one Daniel Wood, guaranteed by said John B. Wood, and payable to said Charlotte M. Wood, with interest. Note dated April 9, 1849, for $67, signed by said John B. Wood, and payable to said Charlotte, with interest. Note dated January 3, 1853, for $120, signed by said John B., and payable to said Charlotte, with interest. Note dated March 31, 1852, for $1849, signed by said John B. Wood, and payable to said Catharine M. Wood (now Lord), with interest. That said note for $120, payable to Charlotte M. Wood, was given by said John B. in renewal of another note for $120, dated November 4, 1850, due from said John B. to said Charlotte ; that said note for $1849, payable to said Catharine M., was given by said John B. in renewal of a previous note for $1454, dated January 17, 1850, signed by said John B. Wood, and payable to said Catharine M., with interest, and of a note for $175, dated March 22, 1851, signed by said John B., and payable to said Catharine, with interest ; that said notes, thus secured by mortgage as aforesaid, have never been paid, nor any part of them ; that said mortgages have not

been foreclosed, but all the right in equity of said John B. to redeem said mortgaged premises with others, was, in November, 1854, sold on execution against said John B. Wood, for $25, to Hiram R. Roberts, and that, on November 20, 1855, said Roberts, for $27, sold and con-veyed to said Catharine all said right of redemption ; that the attachment of said right of redemption thus sold was made in July, 1854 ; that said Catharine afterwards, and before the decease of said John B. Wood, acquired all the interest of said Charlotte M. Wood in said mort-gages and notes ; that neither said John B., nor his wife or family, occu-pied any part of said premises after A. D. 1861; that for a long time prior to January, 1861, said John or his family occupied a part of said premises as tenants of said Catharine, he paying rent for the same ; that soon after January, 1861, said John B. being absent from the State, the said Catharine requested the said Arabella ·to pay rent or vacate the premises, and that said Arabella did move out of the house about the first of March, 1861 ; that soon after, to wit, on the 21st day of July, 1861, said Arabella bought, with one Conner, of one Dow, a lot of land with a dwelling-house and barn thereon, of a value exceeding $500 ; and said Conner, on the 17th day of January, 1862, conveyed all his ·interest in said Dow lot to said Arabella ; that said Dow lot adjoined the lot described in said petition, and had been the homestead of said John B. and his family for a long time prior, and until said John B. moved into the house on the land described in said petition in the summer of 1853 ; that said Arabella has owned and occupied said Dow house as a homestead ever since A. D. 1861."

The court reserved the question whether a defence is stated in the second plea.

*William J. Copeland,* for the plaintiff.

The plaintiff, while she denies the truth of the statements in the de-fendant's second plea, contends that no valid defence is stated therein. 1. The plaintiff contends that the principle in *Strachn* v. *Foss,* 42 N. H. 43, applies only to real estate acquired by a debtor prior to January 2, 1852, and that, as the petition shows that John B. Wood purchased the premises described in the petition in 1853, the homestead right attached at once, and could not be defeated by him or his creditors ·unless the property was purchased fraudulently while in insolvent circumstances. Public Acts 1851, ch. 1089, sec. 7. No such fraud or insolvency is stated in the plea. The plaintiff is entitled to a homestead, at all events, as against the $700 note, payable to Charlotte M. Wood, signed by Daniel Wood, and *guaranteed* by John B. Wood. The plea does not state *when* the note was guaranteed, nor that any " cause of action had accrued thereon " *against John B. Wood* prior to January 2, 1852. A guaranty is an independent contract, and must be made upon sufficient consideration. 1 Parsons on Notes and Bills 125. Such consideration must be stated in the guaranty and averred in pleading. *Wain* v.

*Warlters*, 5 East. 10; *Morley* v. *Boothby*, 3 Bing. 107; *Newbury* v. *Armstrong*, 6 Bing. 201.

The guaranty was to Charlotte, the payee of the note. The transfer of the note to the defendant did not transfer any claim against John B. Wood. *A guaranty is not negotiable.* *True* v. *Fuller*, 21 Pick. 140 ; *Taylor* v. *Binney*, 7 Mass. 479 ; *Springer* v. *Hutchinson*, 19 Me. 359 ; *M'Doal* v. *Yeomans*, 8 Watts 361 ; *Ten Eyck* v. *Brown*, 4 Chand. 151 ; *Sandford* v. *Norton*, 14 Vt. 228 ; *Irish* v. *Cutter*, 31 Me. 536 ; 12 Met. 452 ; 7 Curh. 482 ; 2 Hill 188 ; 3 Gibbs (Mich.) 188.

The plea admits that the mortgages have not been foreclosed. The plaintiff is entitled to homestead in the equity of redemption at least. *Norris* v. *Morrison*, 45 N. H. 490. The defendant in her plea does not claim that the judgment, to satisfy which the equity of redemption was sold in November, 1854, was founded upon a *cause of action accruing prior to January 1, 1852.* The sale was void. *Fogg* v. *Fogg*, 40 N. H. 282. If not void, it is no bar to this plaintiff's homestead. *Norris* v. *Moulton*, 34 N. H. 392; *Fletcher* v. *Bank*, 37 N. H. 369. The plea does not claim possession under mortgages, but claims possession under sale of an equity of redemption. If the plaintiff's homestead is subject to the mortgages, or either of them, she is entitled to homestead in the equity of redemption, and may pay the amount, if anything, found due upon the mortgages, and hold the same as assignee. *Norris* v. *Morrison*, 45 N. H. 490. The mortgagee having purchased the equity of redemption, the mortgages were merged, and the plaintiff is entitled to homestead by paying contribution only. *Norris* v. *Morrison*, 45 N. H. 490. The plaintiff's removal from the premises in 1861 did not defeat her right of homestead—*Atkinson* v. *Atkinson*, 40 N. H. 249; nor the absence of her husband—*Meader* v. *Place*, 43 N. H. 307. By section 6, act of 1851, no conveyance or alienation of the husband could defeat the wife's homestead. Certainly the payment of rent *by him* can have no greater effect than a conveyance by him would have upon such homestead. · The plaintiff's removal from the premises, at the request of the defendant in 1861, did not defeat her homestead in the real estate of her husband. *Atkinson* v. *Atkinson*, 40 N. H. 249. The right of homestead, if she ever had one in the Dow lot prior to 1861, was defeated by her husband's sale thereof, and the purchase of the premises described in the petition. *Horn* v. *Tufts*, 39 N. H. 478; *Nims* v. *Bigelow*, 45 N. H. 347.

The fact that her husband once owned and occupied the Dow lot does not affect the case. All her present rights in it she acquired by purchase from Dow and Conner. Having been, by the defendant's own wrongful acts, deprived of her home in the premises in question, she was obliged to seek a home somewhere, and the fact that without the assistance of her husband she succeeded in obtaining one, does not enable the defendant to deprive her of her homestead in controversy.

*Wells* and *Eastman*, for the defendant.

Neither John B. Wood, nor his wife, the plaintiff, ever had any right

of homestead as against the mortgage debts. *Strachn* v. *Foss*, 42 N. H. 43 ; *Ladd* v. *Dudley*, 45 N. H. 61. The fact that Wood purchased the real estate *after* January, 1852, cannot help the plaintiff. *No right* of homestead in *any real estate*, under the act of 1851, existed as against such debts. Wood's liability on the $700 note was an *original* under-taking, and not within the statute of frauds. The presumption of law is, that the signature was affixed at the time of making the note. *Martin* v. *Boyd*, 11 N. H. 385. The mortgage to secure this note was cer-tainly good to Charlotte, and the defendant could not acquire a good title without paying the same ; and if she paid it, she would, by substi-tution, be held as mortgagee. *Weld* v. *Sabin*, 20 N. H. 537, and cases cited.

If the fact that the right in equity to redeem the mortgaged premi-ses had been sold to satisfy a demand accruing since January, 1852, did not bar John B. Wood's right of homestead, the defendant will ask leave to amend her plea and set out a title by deed from said John B. of all his right to the mortgagee's premises, dated September 28, 1854, and recorded October 3, 1854, in Strafford County Register, book 215, p. 549. John B. Wood, the husband, then had no right of homestead or any other right in the premises after 1854. Upon the adoption of the General Statutes, taking effect January 1, 1868, the homestead act of July 4, 1851, was repealed. Ch. 273, Gen. Stats. And there were no *accrued rights* of the plaintiff affected by the repeal so as to bring her case within the exceptions or limitations of the re-pealing act. The wife's right of homestead before the death of the husband, and before assignment, has uniformly been held by the court to be only a *contingent inchoate right*, and that no right *vested* until as-signment or the death of the husband ; and such *inchoate* rights are not within the exceptions or limitations. WOODBURY, J., in *Merrill* v. *Sherburne*, 1 N. H., on page 214, says,—" Nor can acts of the legisla-ture be opposed to those fundamental maxims of legislation before par-ticularized, unless they impair rights which are *vested ;* because, most civil rights are derived from public laws, and if, before the *rights* become vested in any particular individual, the convenience of the State pro-duces amendments or a repeal of those laws, those individuals have no cause of complaint. The power that authorizes or proposes to give, may always revoke before an *interest* is *perfected* in the donee. Thus the right of *femmes covert* to dower, at any period before the death of the hus-band, may be modified or taken away." In *Miller* v. *Dennett*, 6 N. H. 115, it is held that the legislature may change joint tenancies, created by deed then existing, into tenancies in common, at any time before the estate *actually vests* by survivorship. In *Lakeman* v. *Moore*, 32 N. H. 413, SAWYER, J. says,—" The right which is to be thus upheld against the repeal must be a *vested* right." " A perfect vested right can be no other than such as is not doubtful or depending on any contingency, but *absolute, fixed,* and *certain.*"

In *Rich* v. *Flanders*, 39 N. H. 365, FOWLER, J., says,—" A statute is not objectionable as retrospective because it purports to operate on prior

*contingent* or *qualified* rights, but only when it operates to divest *vested rights.*"  See, also, *Willard* v. *Harvey*, 24 N. H. 344 ; *Mooers* v. *Baker*, 29 N. H. 427, and cases in Morrison's Dig. 160, under title "Restrictions upon the Legislature," and do. page 589, under title "Revision and Repeal."  The principle is also in accordance with sec. 5, ch. 273, Gen. Stats.  But suppose it be said that the provisions of the act of 1851, giving the right of homestead, were *substantially* reënacted in the General Statutes, and continue in force from their first enactment, according to sec. 13 of ch. 273, we answer,—

1. That those provisions are not *substantially* reënacted, but that *substantially* different provisions were adopted.  The revising committee, that reported the General Statutes and the repeal of the act of 1851, in cluding said 13th section, to the legislature, say, that section 1 of chapter 124, which they propose in place of section 1 of the act of 1851, is a "*substitute* with *materially different provisions ;*" and the legislature enacted this *substitute* precisely as reported by the committee.  Introductory Rep. of Com. 4 ; Rep. of Com. 316, sec. 1 ; Gen. Stats., ch. 124, sec. 1.

2. That if any of the provisions of sec. 1 of the act of 1851 were saved by sec. 13, ch. 273, they are not saved in the repealing act of July 4, 1868, for sec. 13 applies only to that particular time and chapter, and there is no such proviso to the act of 1868.  Laws of 1868, ch. 1, sec. 37.

How, then, and under what provision of law, does the plaintiff claim a homestead on the premises ?  We submit that if she has any such right, she must hold it under the provisions of the law in force at the time the right *vested*.  No assignment of homestead has ever been made.  The husband died in 1870.  The law in force at that time was the General Statutes, ch. 124, as amended by the act of 1868, ch. 1, secs. 33 to 37 inclusive.  Under this law," the wife, widow, and children of every person who is the owner of a homestead, or of any interest therein, occupied by himself or herself, and his or her family, shall be entitled to so much of said homestead or interest as shall not exceed in value five hundred dollars," &c.  Under this law, we claim that the plaintiff has no right of homestead in the premises.  Neither John B. Wood, nor his wife, the plaintiff, has under this law ever been the owner of a homestead or of any interest therein occupied, &c., and she takes nothing by her petition.

There is no occasion in the present case for a forced construction of the law, as the widow has all the law ever contemplated securing to her—a homestead of her own, of a value exceeding $500.

BELLOWS, C. J.  In answer to the petition for a homestead, the defendant sets up two mortgages made by the husband of the petitioner in his lifetime to the petitionee and one Charlotte M. Wood, one mortgage dated November 21, 1853, and the other July 22, 1854, and both conveying the lands in question to secure the payment of sundry promissory notes of the mortgagor, payable some to said Charlotte, and the rest to the petitionee.  All of said notes were either given prior to January 1, 1852, or in renewal of notes given before that time.

The answer alleges, also, that before the death of the husband, which was in August, 1870, the petitionee had acquired all the interest of the said Catharine in said mortgages and the debts thereby secured, and that no part of these debts has ever been paid. It is contended by the plaintiff, that as the husband acquired this land after January 1, 1852, the homestead right at once attached, and these debts were not privileged. But we think it very clear that the family homestead was exempt from attachment only as against debts accruing since January 1, 1852, without regard to the time when such homestead was acquired. It is well settled, also, that a promissory note, given after January 1, 1852, to review a debt existing before that time, retains its character as a privileged debt, the substantial nature of the debt not being changed, but the security only. *Strachn* v. *Foss*, 42 N. H. 43 ; *Weymouth* v. *Sanborn*, 43 N. H. 171 ; *Ladd* v. *Dudley*, 45 N. H. 61. It is objected, also, that in respect to the note of $700, guaranteed by John B. Wood, the husband, enough is not stated to show an existing liability. If this be so, as is quite probable, the answer can readily be amended if if the facts will warrant it.

We then have a case of mortgages made by the husband alone in 1853 and 1854, while the homestead act of 1851 was in force, to secure the payment of debts that accrued prior to January 1, 1852 ; and in respect to these mortgages, it must be considered as settled that the right of homestead does not exist. *Strachn* v. *Foss*, 42 N. H. 43. It is obvious that the homestead was not exempt from attachment and execution as against these debts, and the prohibition against conveyances by the husband applied only to property so exempt ; and therefore it was held, in *Strachn* v. *Foss*, that the husband alone could mortgage property situated like this.

So far the rights of the petitionee were governed by the law of 1851, and were vested. The question then arises in respect to the equity of redemption. That was sold on execution against said John B. Wood, in November, 1854, to one Roberts, and by him conveyed to the petitionee. It does not appear, however, that the debts for which it was so sold were privileged as against the homestead. The widow, therefore, under the law of 1851, would ordinarily be entitled to homestead in the lands subject to the mortgages. *Norris* v. *Moulton*, 34 N. H. 392 ; *Norris* v. *Morrison*, 45 N. H. 490. Nor would the fact that she was compelled by the mortgagee to leave the premises in March, 1861, in the lifetime of her husband, deprive her of this right ; neither would the fact that the husband paid rent to the mortgagee affect her. *Atkinson* v. *Atkinson*, 40 N. H. 249 ; *Meader* v. *Place*, 43 N. H. 307. But the plea alleges that in January, 1862, the petitioner became the owner of another dwelling-house and land, and that she has ever since owned and occupied it as a homestead ; and if this is true, it is a good answer to the petitioner's claim. A person can have but one homestead at the same time, and, upon acquiring a new homestead, the old one is necessarily abandoned. *Horn* v. *Tufts*, 39 N. H. 478 ; *Nims* v. *Bigelow*, 45 N. H. 347. From the leaving of the old homestead, it

would not however necessarily follow that it was abandoned as such. It might be for a mere temporary purpose, and with the intention to return, and the new home might be occupied merely for the time being, not intending to make it the homestead. This would ordinarily be a question of fact for the jury; but here it is expressly stated that the petitioner owned and occupied the new place as a homestead ever since 1861, and unless that is disproved it is an answer to this petition. The law, as to the effect of acquiring a new homestead, would be the same under the General Statutes as under the law of 1851; but should it be found that a new homestead had been acquired in this case, a question might arise as to the operation of the General Statutes upon the claims of the parties here. The question might be one of some difficulty, and as it is not necessarily now raised, and may not be at all, we have not considered it.                                    *Case discharged.*