## CURRIER v. WOODWARD.

Mere intention to occupy premises as a home at some future time, without actual residence or occupancy, is insufficient to establish a homestead.

Occupancy is essential to the existence of the homestead right, and for the purpose of its creation or inception the occupancy must be actual, although a constructive occupancy may be sufficient to retain a homestead once acquired.

PETITION, to determine the question of the defendant's homestead right in a house and land in Nashua, under Gen. Laws, *c.* 138, *s.* 20. Facts found by the court.

In June, 1881, the plaintiff, having an execution against the defendant's husband, proceeded to levy it upon his right in equity to redeem the premises from a mortgage. He applied to the officer having the execution to assign a homestead in the premises to his wife. The plaintiff denied the right of homestead, and returned the execution July 30, 1881. The declaration in this case was filed October 7, 1881. The defendant's husband died August 23, 1881. The widow appeared, claiming a homestead. In the fall or early winter of 1879, Woodward owned and occupied with his wife a homestead in Springfield, and went thence to Wilmot, taking most of their furniture, but intending to return in the spring, if, meanwhile, the homestead was not sold. About February 1, Woodward exchanged his Springfield farm for the house and lot in Nashua, assuming to pay the mortgage on the latter as part of the price. Woodward did not go to the Nashua house to live, nor has his wife occupied it or lived there since her husband died, but the house has been let to tenants. He was in failing health when they went to Wilmot, and in the spring or summer of 1880 they went to his brother's in Warner, where, after about two months, he died. After taking a conveyance of the Nashua house, Woodward and his wife intended to go there to live as soon as he might be able, and since his death the widow has intended to occupy the place as a homestead. At the time of the attempted levy they had no other homestead.

*Leach & Stevens*, for the defendant.

*C. W. Hoitt* and *Gould & Martin*, for the plaintiff.

CLARK, J. "The wife, widow, and children of every person who is owner of a homestead, or of any interest therein, occupied by himself or herself and his or her family, shall be entitled to so much of said homestead or interest as shall not exceed in value five hundred dollars, as against the creditors, grantees, and heirs of such person, for and during the life of such wife or widow and the minority of such children." G. L., *c.* 138, *s.* 1. In *Hoitt v. Webb*, 36 N. H. 158, 166, it was held that "homestead means the home place—the place where the home is. It is the home, the house and adjoining land, where the head of the family dwells—the home farm. It does not extend to other tenements, lots, and farms that are not occupied personally by the owner and his family—houses in which they do not dwell, and farms on which they do not live. It cannot apply to leased property, occupied by tenants, where the owner does not dwell." This definition is cited and approved in *Horn v. Tufts*, 39 N. H.

478, 483. In *Austin* v. *Stanley*, 46 N. H. 51, 52, it is said that "homestead means home place, or place of the home, and the question whether the premises were exempt from the levy is to be determined by the rules applicable to residence or domicil—rules of familiar and frequent application in questions of right to vote and liability to be taxed. The statute was specially intended to secure to debtors and their families the shelter of the homestead roof; not to exempt mere investments in real estate, or the rents and profits derived therefrom."

By the terms of the homestead act and the uniform current of decisions under it, occupancy is essential to the existence of the homestead right, and for the purpose of its creation or inception the occupancy must be actual; but when the premises have become invested with the homestead character, and a homestead has been once acquired, a constructive occupancy may be sufficient to retain it, and it will not be lost by a temporary absence with no intention of abandonment. Thomp. H. & Ex., *s.* 263, *et seq.* The statute exempts only a homestead, in fact, the place of the home. It does not undertake to exempt a contemplated future homestead, and therefore the mere intention to occupy the premises at some future time as a home, without actual occupancy, is insufficient to impress upon them the homestead character. In Vermont, under a statute requiring occupancy, similar to ours, it has been held that "a piece of land which has a dwelling-house upon it, occupied by a tenant, but upon which the owner never resided, cannot be treated as his homestead within the meaning of the statute, though he had no other dwelling-house, and may have contemplated living upon the premises at a future time" (*True* v. *Morrill*, 28 Vt. 672); and in *Spaulding* v. *Crane*, 46 Vt. 292, it was held that "actual residence upon the premises, and occupation thereof as a homestead" were necessary to constitute the occupancy required by the statute. An application of the law of domicil leads to the same result. To constitute or acquire a domicil, two things must concur,—residence, and the intention of making it the home of the party. *Leach* v. *Pillsbury*, 15 N. H. 137; *Foss* v. *Foss*, 58 N. H. 283, 284. Evidence of a mere intent cannot establish the fact of domicil (*Holmes* v. *Greene*, 7 Gray 299, 301); but when once acquired it may be retained by the intention not to change it. *Hart* v. *Lindsey*, 17 N. H. 235, 243.

Neither the petitioner nor her husband, in his life-time, ever lived upon the Nashua place, nor was it ever occupied by either of them personally. Since the petitioner's husband acquired the title, it has been occupied by tenants. It was never their home in fact, and therefore it was not exempt as a homestead occupied by them. Whether, in any case, an intention of present and immediate occupancy can be treated as equivalent to actual occupancy (Thomp. H. & Ex., *s.* 249), it is unnecessary to consider, and

upon this point we express no opinion. The case shows no intention of present occupancy. The petitioner's husband took the conveyance of the Nashua place about February 1, 1880, and they intended to go there as soon as he might be able—not immediately. His health continued to fail until his death, which occurred August 23, 1881. The intention to remove to Nashua was at no time fixed and definite, and, in fact, they never removed there.

The fact that the homestead in Springfield was exchanged for the Nashua house and lot does not aid the petitioner, or relieve her claim of the fatal objection that the Nashua place was never occupied as a homestead. The homestead character was not impressed upon the premises by the exchange. That they were paid for by an exchange of premises which had been occupied as a homestead, rather than in money, does not alter the legal aspect of the case. The homestead character cannot be transmitted by an exchange without occupancy, any more than it can be acquired by intention without occupancy. The language of the court as to an exchange of the homestead, in *Tucker* v. *Kenniston*, 47 N. H. 267, 268, and *Currier* v. *Sutherland*, 54 N. H. 475, 487, has reference to an exchange accompanied by occupancy. Our homestead statute does not, as in Wisconsin and some other states, empower the debtor to sell or exchange his homestead without subjecting it to the demands of creditors. We can only interpret the statute according to its terms. In the language of *Redfield*, J., in *Bugbee* v. *Bemis*, 50 Vt. 216, 219, " The statute is indeed to be liberally construed to insure the beneficial purpose of the provision ; but the court are not to constitute themselves the almoners of such beneficent purpose, and distribute bounties in their discretion, but, rather, to give such construction as shall establish a general rule, applicable to all cases."

<em>Case discharged.</em>

ALLEN, J., did not sit: the others concurred.