**In re James A. ECKOLS, Debtor.**

**In re James FOLLOMON, Debtor.**

**Bankruptcy Nos. 85–517, 86–62.**

United States Bankruptcy Court,
D. New Hampshire.

July 30, 1986.

Barbara Millar, Nashua, N.H., for debtor Follomon.

Matthew Epstein, Concord, N.H., for debtor Eckols.

Dennis Bezanson, South Portland, Me., trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

Since the matters pending in both of these cases involve similar facts and a common issue of law, this memorandum opinion will address jointly the objections raised to the debtor's claim of a homestead exemption concerning certain real property in each case. The legal right to the homestead exemption is governed by N.H.R.S.A. 480:1 (Supp.1985). This is so because the Bankruptcy Code exemption provision in § 522 of the Code authorizes the various states to "opt out" of the federal exemption provisions. New Hampshire so elected by virtue of R.S.A. 511:2–a.

The New Hampshire statutory provision on homestead exemptions in RSA 480:1 (Supp.1985) is quite brief: "Every person is entitled to $5,000 worth of his homestead, or of his interest therein, as a homestead ..." The remainder of this statutory provision sets forth special rules regarding manufactured housing, i.e., mobile homes, which are not pertinent here.

The New Hampshire Supreme Court has read into the statute the further requirement that "occupancy" is essential to the existence of the homestead right, and that for the purpose of the *creation* of the homestead right the occupancy must be actual and physical in nature. *Currier v.*

*Woodward,* 62 N.H. 63 (1882). The New Hampshire Court has recognized however that once a homestead is validly established by possession the homestead right may be continued in some circumstances by constructive possession or temporary absence with no intent to abandon the homestead permanently. *Currier v. Woodward, supra,* in *dicta; Austin v. Stanley,* 46 N.H. 51 (1865); *Wood v. Lord,* 51 N.H. 448 (1871).

The only reported decision in New Hampshire involving a homestead exemption claim in a divorce context apparently is the decision in *Wiggin v. Buzzell,* 58 N.H. 329 (1878). That brief, one-paragraph decision, denied the husband's claim to an exemption under a statute which at that time gave the homestead exemption only to the "wife, widow, or children." The court does state that the ex-wife's "homestead right, not being reserved in the judgment of divorce, was lost." However, it appears from the decision that the basis for this reference was that the wife's alimony "was determined upon consideration of her loss of her rights in his property." The *Wiggin* decision accordingly is not a general proscription against retention of homestead rights during the pendency of a divorce proceeding. It appears therefore that there is no decision of the New Hampshire Supreme Court squarely deciding the question of loss or retention of homestead rights in a pending divorce proceeding where there was no intentional relinquishment of the same.

## ECKOLS FACTS

The wife of the debtor Eckols filed for divorce in New Hampshire in August of 1984. At that time the debtor and his wife jointly owned and occupied a home in Bedford, New Hampshire as their homestead. On August 21, 1984 the divorce court entered a temporary order expelling the debtor from the premises and subsequently, on September 24, 1984, provided that "whichever party is deemed by the court to be the temporary physical custodian for [the] minor children shall have the temporary use of the parties' Bedford homestead." A guardian *ad litem* was appointed to investigate and report to the court with regard to the appropriate party to obtain custody of the children.

The effect of the foregoing two orders by the divorce court was to leave the wife in possession of the homestead and to forbid the debtor to possess the homestead until, and if, the court ultimately determined that the debtor was to obtain custody of the children.

The debtor filed his bankruptcy petition in this court on November 26, 1985. At that time the guardian had not yet reported on the custody issue and neither party had moved to force the report to be filed or for any further hearing to be held before the divorce court. Subsequently, in the Spring of 1986, the report of the guardian and a psychologist was filed and recommended to the divorce court that custody of the children be given to the debtor. This matter was still pending for final resolution in divorce court at the time of the March 17, 1986 hearing in this court on the trustee's objection to the debtor's claim of homestead exemption.

The evidence indicates that the debtor has had a number of various residences under oral tenancies or written leases in New Hampshire, Missouri, and Nevada during the pendency of the divorce proceeding and the present bankruptcy proceeding. While the trustee contends that these facts indicate that the debtor had no intent to return to the family home, I find to the contrary in that the debtor's occupation as an airline pilot satisfactorily explains these changing residences as being only temporary accommodations to his work as his airline activities changed.

It appears from the record that the debtor in fact did intend to return to the family home and reside with his children if he won the custody battle in the divorce court. The evidence further indicates that the delay in achieving a resolution of that issue in the divorce court was not attributable solely to the debtor. There was considerable delay in getting the appropriate report

from the guardian and psychologist as required by the divorce court.

As a practical matter, the parties agreed after the filing of the bankruptcy to allow the trustee to sell the property in question. The dispute therefore revolves around the issue of whether debtor is entitled to $5,000 of the sales proceeds as his homestead exemption right under the New Hampshire statute.

## FOLLOMON FACTS

In this case the homestead exemption issues is raised obliquely in conjunction with an attempt by the debtor to avoid an attachment lien by Fleet National Bank pursuant to the provisions of § 522(f) of the Bankruptcy Code. That provision would allow nullification of the attachment lien in question if it is shown that it would "impair" a valid exemption right of the debtor. The parties have submitted the legal issue on the exemption right to the court for decision, with a subsequent factual hearing to be held on the question of value of the property in question and any impairment, depending on the ruling on the legal issue.

On November 26, 1985 the Bank served a Writ of Attachment, under a prior authorizing order of the Nashua District Court, effectively attaching the debtor's interest in the real property in question. That property was the former family home of the debtor and his ex-wife. The debtor filed his bankruptcy petition in this court on February 13, 1986.

In the earlier divorce proceeding, the debtor and his wife signed a permanent stipulation pursuant to the divorce on October 4, 1982. This stipulation did not directly address the homestead rights of the parties but provided that upon the sale of the real property the debtor would be entitled, with certain exemptions herein not pertinent, to one-half of the equity in the property.

The stipulation, which was incorporated into the divorce decree, contemplates that the debtor would never return to the family home but would receive his one-half interest in the equity when the property was sold. The property was to be sold, or the debtor given his share in cash, when the wife remarried or the youngest child reached the age of majority. The debtor was effectively and involuntarily removed from the family home by prior orders of the divorce court.

There is no evidence before the court in this case as to any intent by the debtor to return and occupy the family home. The evidence is clear, however, that both the debtor and his ex-wife contemplated and agreed, and the divorce court approved, the ultimate sale of the property with the debtor receiving his one-half interest out of the sale proceeds.

## DISCUSSION

It is well-established that a debtor's exemptions in a bankruptcy proceeding are to be determined as of the date of the filing of the bankruptcy petition. 3 *Collier on Bankruptcy*, 15th Ed., ¶ 522.23 "Homesteads", p. 522–71 (1986). And as indicated above, the issue in the present cases is to be determined by the application of New Hampshire exemption law to the factual situation that existed on each filing date.

While there is no pertinent New Hampshire authority on the question here presented, the court notes a number of recent decisions in New York upholding the claim of homestead exemption in the divorce context. See, e.g., *In re Smith*, 57 B.R. 81, 13 B.C.D. 1290 (Bankr.W.D.N.Y. 1985); *In re Warren*, 38 B.R. 290 (Bankr. N.D.N.Y.1984); *In re Thomas*, 27 B.R. 367 (Bankr.S.D.N.Y.1983). The New York exemption statute, quoted in the *Smith* opinion, is not materially different from the New Hampshire statute, except that the occupancy requirement is spelled out by the statute rather than left to case law development. The court in the *Smith* case points out a pertinent policy argument for its construction of the word "occupied" in the pending divorce proceeding context:

While it may be extraordinary for a court to take such a clear and unambig-

uous word as "occupied" and temper it, that is precisely what this Court is convinced the State courts would do.

To read the word literally would permit creditors to dismantle property rights of the parties to a matrimonial dispute before the State courts have the opportunity to act to safeguard those interests and, perhaps, even more important, the interests of any children of the marriage. It would encourage, it not require, the often hostile parties to a matrimonial dispute to continue to share the marital abode on penalty of loss of property rights. The potential for harm to a spouse or to children in such circumstances hardly need be elaborated upon. In sum, literal reading of the word would not be consonant with strong, well-established, and long standing policies of the State of New York and hardly would have been within the intent of the Legislature.

This Court, therefore, concludes the New York courts would not construe absence from the marital abode pending final resolution of property rights by its courts to constitute an abandonment of rights of residency or occupancy of a homestead under section 5206 of New York's Civil Practice Law and Rules.

In New Hampshire the "occupancy" requirement is not even set forth by statute but has been developed by case decisions. Moreover, per the New Hampshire case decisions cited above, the New Hampshire Supreme Court has indicated flexibility in the application of the occupancy requirement.

In the absence of any contrary New Hampshire decision, and being persuaded by the correctness of the foregoing analysis from the *Smith* decision, I conclude that the New Hampshire courts would likewise honor the homestead exemption claim of a spouse involuntarily separated from occupancy of the homestead property during a pending divorce proceeding. In the Eckols case this result is clearly foreshadowed by the New Hampshire decisions inasmuch as the evidence in

that case establishes a consistent intent to return to the family home by the debtor notwithstanding his temporary absence pending the custody resolution. In the Follomon case there also was involuntary absence but no intent to repossess the property in view of the agreement to split the equity. While this situation presents a weaker case for the debtor claiming homestead exemption, I conclude on balance that the New Hampshire courts would honor the claim of exemption in this situation as well—following the family policy considerations and rationale expressed in the *Smith* decision.

## DECISION

Accordingly, a separate order will be entered in the Eckols case denying the trustee's objection to the claim of exemption and allowing the claim of the debtor to $5,000 of the property sale proceeds. In the Follomon case this opinion shall constitute the ruling of the court on the legal question of entitlement to the homestead exemption by the debtor, and the Clerk shall set down that case for further trial on the factual issues of value and impairment.