In re Walter M. MARSICO, Sr., Debtor.

No. 01–12120–JMD.

United States Bankruptcy Court,
D. New Hampshire.

April 26, 2002.

Grenville Clark III, Gray, Wendell & Clark, P.C., Manchester, NH, for Debtor.

Charles Gallagher, Haughey, Philpot & Laurent, P.A., Laconia, NH, for Creditor Canopache Cottages Association.

Richard Nicholson, Law Office of Richard S. Nicholson, Concord, NH, for Creditor Walter Morgner Jr.

*MEMORANDUM OPINION*

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

On March 13, 2002, the Court held a hearing on an Objection to Claim of Exemption filed by Canopache Cottages Association ("Canopache").[1] Canopache was objecting to a federal exemption the Debtor claimed pursuant to 11 U.S.C. § 522(d)(1) (hereinafter the "Federal Exemption"). The Debtor had claimed the exemption by filing Debtor's Notice of Amendment to Schedule C (the "Notice of Amendment") on December 21, 2001. *See* Doc. No. 62. After hearing from all parties the Court established a post-hearing briefing schedule and took several discreet matters under submission. The Court indicated to the parties that the Court would first decide whether the word "residence" in section 522(d)(1) had the same meaning as "domicile" in section 522(b)(2). Upon determining the meaning of the word "residence" as used in section 522(d)(1), the Court stated that it would determine whether the Court's prior rulings in this case had any effect on the exemption now claimed by the Debtor under section 522(d)(1). The Court further indicated to the parties that once these two discreet matters had been decided, the Court, if appropriate, would schedule a further hearing to allow the parties to present argument on other objections related to the Debtor's claim of exemption under section 522(d)(1).

This Court has jurisdiction of the subject matter and the parties pursuant to 28

---

**1.** While the objection was filed by Canopache, it was represented to the Court at the March 13, 2002 hearing that the memorandum in support of the objection was actually a collaborative effort between Canopache and credi-tor Walter Morgner ("Morgner"). Accordingly, the Court allowed Morgner to be heard at the March 13th hearing with regards to the Canopache objection.

U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

### A. History

On June 22, 2001, the Debtor filed a Chapter 13 bankruptcy petition with this Court. In his petition the Debtor claimed a homestead exemption in a home he owned in Wolfeboro, New Hampshire (the "Property") pursuant to section 522(b)(2) and the New Hampshire Revised Statutes Annotated (hereinafter the "State Exemption"). Canopache and Morgner objected to the State Exemption on the ground that the Debtor was not domiciled in New Hampshire. On December 10, 2001, the Court issued a memorandum opinion sustaining the objection to the State Exemption on the ground that the Debtor was not a domiciliary of New Hampshire. *See In re Marsico*, 2001 BNH 047, 2001 WL 1757046. On December 21, 2001, the Debtor filed an amendment to his schedules and claimed the above mentioned Federal Exemption in the Property.

On January 10, 2002, Canopache filed its objection to the Federal Exemption claimed by the Debtor. Canopache claims that although section 522(d)(1) refers to an exemption in a debtor's residence as opposed to referring to domicile, the term residence should be equated with domicile. Therefore, Canopache claims that the Debtor may not claim an exemption in the Property because this Court has previously ruled that the Debtor was not domiciled in New Hampshire. The Debtor argues that residence and domicile have two separate meanings under the Bankruptcy Code and that the Court's prior ruling does not preclude the Debtor from claiming the Federal Exemption in the Property.

## III. DISCUSSION

### A. Procedural Posture

When objecting to claims of exemption that have been amended by a debtor during the pendency of a bankruptcy case there are generally two separate paths that parties may follow. One path a party may choose is to object to the debtor's ability to *properly claim* an exemption. Under Federal Rule of Bankruptcy Procedure ("Rule") 4003(b) a party in interest may object to an exemption claimed by the debtor. The objecting party then bears the burden of proving that the exemption has not been *properly claimed*. *See* Rule 4003(c). Here the focus is on whether or not the debtor meets the requirements for claiming the exemption.

In addition to or instead of objecting to the debtor's right to claim an exemption a party may choose to object to the debtor's *right to amend* his or her schedules under Rule 1009(a). While a debtor may amend his or her schedules at any time prior to the closing of the case, two clear exceptions to a debtor's right to amend his or her schedules, prejudice and bad faith, have been established by case law. *See e.g., Osborn v. Durant Bank & Trust Co.*, 24 F.3d 1199, 1206 (10th Cir.1994); *In re Yonikus*, 996 F.2d 866, 872 (7th Cir.1993); *Stinson v. Williamson (In re Williamson)*, 804 F.2d 1355, 1358 (5th Cir.1986); *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000); *Pope v. Clark (In re Clark)*, 274 B.R. 127, 136 (Bankr.W.D.Pa. 2002). Canopache's written objection only claims that the Debtor does not meet the requirements for claiming an exemption. However, Canopache amended its objection at the March 13, 2002 hearing to claim that even if the Debtor may claim the

exemption the amendment to schedules should not be allowed due to prejudice to the creditor.

At the March 13, 2002 hearing the Court indicated that it would take under advisement only the Debtor's qualification to properly claim a homestead exemption in the Property under section 522(d)(1) and the impact, if any, that the Court's prior ruling had on that issue.

## B. "Residence" for Purposes of Section 522

Sections 522(b)(1) and (d)(1) allow a debtor to claim an exemption in property that the debtor or a dependant uses as a "residence." However, the term "residence" is not a defined term in the Bankruptcy Code. Neither party has cited, and the Court has not found, any precedent in this circuit concerning the meaning of "residence" as used in section 522(d)(1). However, the Bankruptcy Appellate Panel has ruled that while a debtor may have multiple residences, only one such residence may qualify for purposes of establishing venue under 28 U.S.C. § 1408(1). *HSBC Bank USA v. Handel (In re Handel)*, 253 B.R. 308, 311 (1st Cir. BAP 2000).

As has been previously noted by this Court, the terms residence and domicile clearly have separate and distinct meanings in other sections of the Bankruptcy Code. *See* 11 U.S.C. § 522(b)(2) and (d)(1); 28 U.S.C. § 1408(1). A Pennsylvania bankruptcy court has specifically addressed the use of the terms "residence" and "domicile" as used in section 522 and found that "[a]lthough domicile and residence are often loosely used as synonymous, the specified enumeration of each in the Code indicates an intention to maintain a legal distinction between them." *In re Tomko,* 87 B.R. 372, 374 (Bankr.E.D.Pa. 1988) (quoting 3 *Collier on Bankruptcy*

para. 522.06, at 522–28 (15th ed.1987) (footnotes omitted)).

Domicile has been defined as a place where a person has a permanent home and an intention of returning. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *Tomko,* 87 B.R. at 374. The term "residence" on the other hand does not include the intention required for domicile. *Tomko,* 87 B.R. at 375. "Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home." *Black's Law Dictionary* 1176 (5th ed.1979). One bankruptcy court has observed:

> Residence, when used in a sense other than domicile, is one of the most nebulous terms in the legal dictionary and can have many different meanings depending on the context in which it is used. Residence is less inclusive than domicile, importing merely having an abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present.

*In re Frame,* 120 B.R. 718, 723 (Bankr. S.D.N.Y.1990) (citations omitted). However, while mere physical presence may qualify as a "residence" for some legal purposes, it does not qualify for determining such things as the proper venue for a bankruptcy proceeding. *Handel,* 253 B.R. at 310; *Frame,* 120 B.R. at 724.

 The above discussion makes it clear to the Court that the terms "residence" and "domicile" have different meanings under the Bankruptcy Code. The term residence, as used in the Bankruptcy Code, does not include within its meaning a requirement that a Debtor have a present intention to remain at the property. To qualify as a residence the property need only be a place where the Debtor lives on more than a transient basis. Ac-

cordingly, the Court finds that the term "residence" as used in section 522(d)(1) does not have the same meaning as the term "domicile" in section 522(b)(2). The question for the Court is whether more than mere physical presence in a property on the petition date, regardless of the duration or purpose of that presence, is sufficient to qualify for a claim of exemption for that property under section 522(d)(1).

In looking at the purpose behind section 522(d)(1), the court in *Tomko* found that prior to the passage of the Bankruptcy Code, debtors were limited to the allowance of exemptions as permitted by the state laws of their domiciliary state. *Tomko*, 87 B.R. at 373. Homestead was a common exemption under most state laws. *Id.* at 373. In *Tomko* the court turned to the legislative history of the Bankruptcy Code to determine the Congressional intent behind section 522(d) and found that:

> [s]ubsection (d) [of 11 U.S.C. § 522] specifies the Federal exemptions to which the debtor is entitled. They are derived in large part from the Uniform Exemptions Act, promulgated by the Commissioners of Uniform State Laws in August, 1976. Eleven categories of property are exempted. First is a homestead ... which may be claimed in real or personal property that the debtor or a dependent of the debtor uses as a residence.

*Id.* at 374. As the legislative history used the term "homestead" to describe or modify the term "residence," the court stated that, "[b]ased upon this legislative history, I conclude that the purpose of subsection 522(d)(1) was to provide those debtors eligible to select the federal exemptions with a homestead exemption, and that the term 'residence' must be interpreted within this light." *Id.; accord In re Buick*, 237 B.R. 607 (Bankr.W.D.Pa.1999); *In re Brent*, 68 B.R. 893 (Bankr.D.Vt.1987). As

the court in *Brent* pointed out, however, "[a] homestead is a property interest. Property interests are not created by the Constitution, but by existing rules or understandings that stem from an independent source such as State law." *Brent*, 68 B.R. at 895. This Court agrees with the rationale in the *Tomko* and *Brent* decisions. Accordingly, New Hampshire law on creating a homestead will be examined in order to determine the meaning of the term "residence" for purposes of section 522.

### C. "Residence" under New Hampshire Law

The words "residence" and "domicile" have sometimes been used as "substantially convertible terms" in New Hampshire law. *Hanson v. Hanson*, 78 N.H. 560, 560–61, 103 A. 307 (1918) (interpreting a statute conferring jurisdiction in divorce actions). This practice continues in New Hampshire. The state legislature has defined the word "residence" for purposes of state statutory interpretation as "a person's place of abode or domicile. The place of abode or domicile is that designated by a person as his principal place of physical presence for the indefinite future to the exclusion of all others." N.H.Rev. Stat. Ann. § 21:6–a (2001). This definition would appear to equate "residence" and "domicile" for purposes of interpreting state statutes.

New Hampshire law also provides every person with a $50,000.00 homestead exemption. N.H.Rev.Stat. Ann. § 480:1 (2001). The purpose of the New Hampshire homestead exemption is to "secure to debtors and their families, the shelter of the homestead roof; not to exempt mere investments in real estate, or the rents and profits derived therefrom." *Austin v. Stanley*, 46 N.H. 51, 52 (1865). The creation of a homestead right requires

actual physical occupancy of the property. *See Currier v. Woodward*, 62 N.H. 63, 65 (1882); *see also In re Eckols*, 63 B.R. 523, 526–27 (Bankr.D.N.H.1986) (discussing the New Hampshire "occupancy" requirement). However, once acquired, the homestead right is not lost by a temporary absence with no intent to abandon the homestead. *See Eckols*, 63 B.R. at 527; *Currier*, 62 N.H. at 65. Accordingly, a debtor occupying five rooms in a thirty-two room hotel was allowed a homestead exemption in the five rooms, but not the remaining twenty-seven, and a party to a divorce proceeding who involuntarily ceased occupying a home did not lose homestead rights. *In re Mirulla*, 163 B.R. 910, 912 (Bankr.D.N.H.1994) (part of a hotel occupied by the debtor); *Eckols*, 63 B.R. at 527 (divorce proceeding).

### D. Establishing "Residence"

Since the Debtor is claiming the Federal Exemption in property located in New Hampshire, the Court shall determine the creation of the interest subject to a claim of exemption as a "residence" under state law, but shall apply the exemption under the provisions of federal law. Although New Hampshire law may not draw a sharp distinction between "residence" and "domicile," the Court believes that as a matter of federal bankruptcy law the two terms do not have the same meaning for purposes of section 522.

■ After reviewing New Hampshire law governing "residence" and "homestead" the Court concludes under principles of New Hampshire law the Debtor may establish the Property as his residence, for purposes of section 522(d)(1), if he physically occupied the Property for a significant period of time as his principal home. *See* N.H.Rev.Stat. Ann. § 21:6–a (2001); *Eckols*, 63 B.R. at 526–27; *Currier*, 62 N.H. at 65. The determination of what is "significant" cannot be defined with precision and must be determined on a case by case basis in light of the purpose for determining the meaning of the word residence. *See e.g., Corwin Consultants, Inc. v. Interpublic Group of Cos., Inc.*, 512 F.2d 605, 610 (2nd Cir.1975) (determining residence for purposes of deciding where to file tax liens on personal property under 26 U.S.C. § 6323(f)(2)(B)).

■ Under New Hampshire law "actual physical occupancy of the Property as [a] home" would not include occupancy of a vacation home or an investment property for a brief period. *See Austin*, 46 N.H. at 52. Nor would occupancy of a seasonal home during a significant portion, or all, of a season necessarily qualify the seasonal home as a principal residence if the debtor has other residences. While the debtor may have more than one residence at a time, he may only have one principal residence at a time. *See e.g., Handel*, 253 B.R. at 310. If the Debtor established that he occupied the Property as his principal residence, he must not have abandoned that use and occupancy prior to the petition date. *Eckols*, 63 B.R. at 526.

■ The principal residence of a debtor is a question of fact which may be determined by a number of factors, including the debtor's occupancy as an inhabitant and not on a temporary or transient basis; the permanence and duration of the occupancy; the reason for his occupancy; and the existence of other residences. *See e.g., Saunders v. U.S. (In re Saunders)*, 240 B.R. 636, 641 (S.D.Fla.1999) (establishing residence for purposes of determining where to file tax liens on personal property under 26 U.S.C. § 6323(f)(2)(B) (citing *Corwin*, 512 F.2d at 610)).

### E. The Court's Prior Rulings

■ The Court must now determine if its prior ruling in this case on December

10, 2001, has any affect on the Federal Exemption now claimed by the Debtor. In rendering its opinion on December 10, 2001, the Court found that the Debtor could not claim a State Exemption in the Property because the Debtor was not domiciled in New Hampshire on the petition date. *See Marsico,* 2001 BNH at 6–10. In its ruling on the Debtor's claim to a homestead exemption under New Hampshire law and section 522(b)(1), the Court found that "[d]uring the time he owned the Property, the [Debtor] resided in the Property … March through mid-October 2000 (7.5 months) and March through July 2001 (5 months) …." *Id.* at 6. During the time he resided in the Property during 2000, the Debtor and/or his wife operated a gas station/convenience store business under a six month trial lease. *See id.* at 2–3. However, when the gas station/convenience store closed for the season, the Debtor returned to New Jersey in the fall of 2000. *See id.* During the winter of 2000–2001 the Debtor and his wife returned to the Property once in connection with an attempted sale of the property. *See id.* at 3. The Court also found:

> The sale of the Property did not occur over the winter and the [Debtor] returned to the [P]roperty in March of 2001. The Debtor testified that during March and April of 2001 he and his wife were making preparations to operate a marina grocery store under a one year lease agreement that had an option for future years. The [Debtor] remained at the Property on a continuous basis until July of 2001 when the Property was sold.

On March 23, 2001 the Debtor's first Chapter 13 bankruptcy petition was dismissed by the Court. *See* Bk. No. 00–10112–JMD, Doc. No. 86. On June 22, 2001 the Debtor filed a second Chapter 13 petition with the Court. After filing his second petition the Debtor asked for and received Court approval to sell the Property. Upon sale of the Property in July the [Debtor] returned to [his] New Jersey home. The Debtor testified that he and his wife continued to search for a new home in New Hampshire.

*Id.*

The Court found that based upon the above mentioned facts, even if the Debtor had established domicile in New Hampshire during his residence in the Property during 2000, his return to his New Jersey residence at the conclusion of his operation of a seasonal gas station/convenience store evidenced a change in domicile back to New Jersey. *See id.* at 8.

In applying the standard set forth above in section III. D to the aforementioned facts, the Court finds that it would reach the same conclusion for "residence" as it did for domicile. Accordingly, the Court finds that its prior ruling establishes that as of the end of 2000 the Debtor either had not established the Property as his residence or had abandoned the Property as his residence.

The Court must now turn to 2001. In reviewing its prior opinion the Court finds that while the Debtor had not established a domicile in New Hampshire in 2001, the record is not clear as to whether the Debtor may have established a residence at the Property for purposes of section 522(d)(1).

**F. Further Hearings**

Since the Court has found that its prior rulings do not preclude the Debtor from claiming an exemption in the Property under section 522(d)(1), the Court will enter a procedural order setting a date for filing amendments to existing objections and any further objections to the Federal Exemp-

tion under either Rule 1009 or Rule 4003,[2] a date for responses to such objections, and scheduling a hearing on the those objections.

Finally, the Court wishes to address two procedural matters that arise out of the March 13, 2002 hearing. First, Canopache raised the issue of prejudice orally at the March 13, 2002 hearing. While the Court viewed this oral objection as sufficient to raise the objection for purposes of that hearing, the Court wishes to make it clear that if Canopache wishes to pursue this objection to amendment of Schedule C, it must file a formal written objection by the date set forth in the separate order entered in conjunction with this memorandum opinion. Second, at the March 13, 2002, hearing Morgner stated to the Court that he had filed his own objection to the Federal Exemption that morning. The Court has reviewed the docket and finds that no objection by Morgner is in the Court's file. The Court is, therefore, unaware of whether Morgner's objection was based solely on the ground that the Court's prior ruling precluded the Debtor from claiming the Federal Exemption or if Morgner's objection was based on other grounds under either Rule 4003 or Rule 1009. If Morgner's objection was based upon other grounds under either Rule 4003 or Rule 1009, Morgner must "re-file" any such objection by the date set forth in the separate order entered in conjunction with this memorandum opinion.

## IV. CONCLUSION

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

2. The Court wishes to make it clear that if Canopache and/or Morgner wish to pursue an objection based upon the ground that the Debtor cannot *properly claim* the Federal Exemption any such objection must be limited to: (i) whether the Debtor established a "residence" in the Property within the standard set forth above between March 2001 and the filing of the petition in this proceeding on June 22, 2001 and (ii) if residency was so established, whether it was abandoned prior to June 22, 2001. *See* Section D *supra.*