## BUGBEE v. BEMIS.

*Homestead.*    *Gen. Sts. c.* 68, *s.* 1.

In ejectment it appeared that plaintiff sold certain real estate, including her homestead, and with a part of the avails thereof, less than the value of the homestead exemption, purchased the demanded premises, which had then just been demised for a term of three years to one then in possession, and who remained therein to the time of trial.   Defendant subsequently set off the premises on an execution against plaintiff.   *Held,* that as plaintiff had no right of occupancy, the premises were not used or kept as a homestead so as to be exempt under s. 1, c. 68, Gen. Sts.

EJECTMENT.   Plea, the general issue, and trial by the court, at the December Term, 1876, Caledonia County, Ross, J., presiding.

The plaintiff purchased and took a deed of the demanded premises on November 18, 1873.   They were then under lease for three years from October 15, then last past, at a rent of $3 per month, to one Gibbs, who then, and at the time of trial, was in occupation thereof.   On November 15, 1872, the plaintiff's husband died, and left property out of which she was entitled to homestead and dower.   About the time of the purchase of the premises in question, she sold her homestead, and her whole interest in her husband's estate, for $1025, receiving $225 in money, and the remainder in notes of the purchaser.   With $150 of the money so paid, she purchased the premises in controversy, intending to occupy them for a homestead as soon as the lease expired, or sooner if Gibbs would vacate.   She afterwards owned no other land with buildings upon it, such as could be occupied for a homestead.   There was no special setting apart of the $225,

nor any particular $500 of the $1025, in payment for her homestead, except so far as her use of the sum paid for the premises in controversy would set it apart. The defendant's title was by virtue of a set-off of the premises on an execution issued on a judgment in his favor against the plaintiff, recovered at the December Term, 1874. The judgment and levy were conceded to be regular, the judgment having been for contribution to the payment of a note upon which the plaintiff and the defendant had been sureties, and which the defendant had paid, the makers having failed. The defendant, after the time of redemption on the levy expired, but before this suit was brought, claimed the premises, stopped the payment of rent, and took the rent from December 15, 1875, down to the time of trial.

Upon these facts the court rendered judgment for the plaintiff to recover possession of the premises, and $36 for rent to December 15, 1876 ; to which the defendant excepted.

*Walter P. Smith*, for the defendant.

The plaintiff could not, of her own will, set apart $500 as a homestead fund. *Keyes* v. *Rines*, 37 Vt. 260.

The premises in question were not a homestead within the meaning of the statute. The first statute compelled occupation. The later statute uses the words " used or kept," but does not protect as a homestead property under long lease.

The statute was never designed to shield property not occupied as a home, but for speculation and profit. Gen. Sts. c. 68, ss. 1, 9 ; *Keyes* v. *Rines*, 37 Vt. 260 ; *West River Bank* v. *Gale*, 42 Vt. 27 ; *True* v. *Estate of Morrill*, 28 Vt. 672 ; *Davis* v. *Andrews*, 30 Vt. 678.

*Elisha May*, for the plaintiff.

The only question is, was the land in controversy " acquired with the consideration derived from the sale or other disposition " of the " prior homestead " ? Gen. Sts. c. 68, s. 9. The plaintiff had a right to say what part of the $1025 she would call the consideration of the former homestead ; and when she elected to take the $150 with the intention of making the land in question her

homestead, it became her homestead. Any other interpretation of the law would be illiberal, and it has been uniformly held that the homestead law should be liberally construed. *West River Bank* v. *Gale*, 42 Vt. 27 ; *Day* v. *Adams*, 42 Vt. 510 ; *Morgan* v. *Stearns*, 41 Vt. 398 ; *Doane's Exr.* v. *Doane*, 46 Vt. 485 ; *Keyes* v. *Hill*, 30 Vt. 759 ; *McClary* v. *Bixby*, 36 Vt. 254 ; *Mills* v. *Estate of Grant*, 36 Vt. 269 ; *Jewett* v. *Guyer*, 38 Vt. 209 ; *Chaplin* v. *Sawyer*, 35 Vt. 286.

There is no evidence that any part of the $1025 was set aside as the money derived from the sale of the homestead ; but it is found that $500 of the $1025 was for a homestead acquired prior to November 15, 1872. When one makes payment upon several indebtednesses, he has the right to elect upon what particular indebtedness the payment shall apply. 2 Parsons Cont. 630 ; *Reed* v. *Boardman*, 20 Pick. 441.

After the plaintiff paid the $150, she could not legally hold that sum as exempt by law except in the property purchased. She could hold as exempt, beside the homestead, $350 only.

The opinion of the court was delivered by

REDFIELD, J. The plaintiff sold some real estate, including her homestead, for $1025, and purchased the house and lot in question, and paid therefor towards such purchase out of the avails of said sale, $150. The premises were then subject to a lease for three years to one Gibbs, who was then and at the time of trial in the occupancy of the same under said lease. The defendant claims by virtue of a levy and set-off on execution, which are conceded to be regular. Were the premises at the time exempt from such levy as the plaintiff's homestead ? Under the statute defining such exemption as a " dwelling-house * * * *occupied* by such housekeeper as such homestead," it could not be claimed, under the decisions in this State, that these premises were exempt from attachment and levy. *Davis* v. *Andrews*, 30 Vt. 678. At the time of this transaction, in the revision of the statute, the descriptive words defining the homestead had become changed from " *occupied* " to " *used* or *kept* by such housekeeper or head of a family as such homestead." In *West River Bank*

Bugbee *v.* Bemis.

v. *Gale*, 42 Vt. 27, the Chief Justice in his opinion notices this change in the statute, and applies the exemption in a case which would have been refused under the decisions construing the former statute ; and we think the distinction there made well founded and just. In that case, the housekeeper had the present right of occupancy, and " *kept* " it for occupancy, and had no other. He had left it for a temporary purpose, and by accident and sickness his temporary absence was prolonged. In this case, the plaintiff was not in fact a housekeeper, and had no present right of occupancy in the premises.

If, by her own act, the plaintiff, after the purchase, had leased the premises for a term of three years, reserving the annual rent for three years, it could not, as we think, be fairly claimed that she " used and kept " the premises for occupancy " as such homestead," but for the rental. And if she voluntarily purchase premises subject to a lease for a term of years, she purchases the reversion, and the right to the rent for the term ; and the two cases, in principle, are the same.

The statute is indeed to be liberally construed, to insure the beneficial purpose of the provision ; but the court are not to constitute themselves the almoners of such beneficent purpose, and distribute bounties in their *discretion ;* but, rather, to give such construction as shall establish a general rule, applicable to all cases. And, we think, the statute was designed to exempt a dwelling-house of the description named in the statute, either actually occupied and " used " as a homestead for such housekeeper ; or else *susceptible* of such occupancy, and " kept " with the present *right* and *purpose* of so occupying and using " such homestead." At the time of the defendant's levy the plaintiff had no *right*, if she had the purpose, to occupy or " use " the premises as such homestead ; nor for at least the term of three years. And, we think, no distinction in principle can be made between a term of three years and a term of ten, or twenty, or for life.

Judgment reversed, and judgment for the defendant.