81 So.2d 214 (1955)
John B. L'ENGLE, Jr., and Cotten Hines L'Engle, his Wife, Appellants,
v.
Leon E. FORBES, as Tax Assessor of Duval County, Florida, et al., Appellees.
Supreme Court of Florida. Division A.
June 1, 1955.
L. Page Haddock and Dillon Hartridge, Jacksonville, for appellants.
Walter C. Shea, Jacksonville, for appellees.
ROBERTS, Justice.
The plaintiffs, husband and wife, own a home in Jacksonville, Florida, as tenants by the entirety, in which they resided until June of 1952. At that time the husband was recalled to active duty in the Armed Forces as a U.S. Navy Reserve Officer for a temporary period. The wife and their two children resided with the husband at the various stations to which he was sent during his tour of duty, except for a few months during the early part of 1953 when the wife resided with her parents in Jacksonville. The home owned by the parties was rented to and occupied by tenants during the last half of 1952 and all of 1953. A claim for homestead exemption for the year 1952 had been timely filed by the husband and allowed by the Tax Assessor, but no claim was made prior to April 1, 1953, for homestead exemption for the year 1953, allegedly because of the husband's absence from the state in military service and the wife's inexperience in business and tax matters.
In October of 1953, the husband wrote to the county tax officials, requesting a homestead tax exemption for his home in Jacksonville for the year 1953. This was denied, and the instant suit was filed in *215 December 1953. The complaint alleged the facts above recounted and, in addition, the fact that the husband expected his tour of military duty to end in March of 1954, at which time the parties would resume occupancy of their home in Jacksonville. The court was asked to decree that the home was and remained homestead property during the entire year 1953 and the first part of 1954 and that the parties were entitled to the homestead exemption privilege granted by Section 7 of Article X of our Constitution, F.S.A. The complaint was dismissed by the lower court on motion of the defendant tax officials, and this appeal followed.
Two questions are presented here: (1) Did the home retain its character as homestead property for tax exemption purposes during the year 1953 under the circumstances mentioned above? (2) If so, was the application for homestead exemption timely filed? The lower court answered both questions in the negative.
In holding that the home could not be classified as homestead property for the year 1953, the lower court relied on the decision of this court in McCullough v. Forbes, Fla. 1950, 47 So.2d 780. In that case, a majority of the court affirmed without opinion a decree denying a homestead tax exemption claimed by an aged widow who rented out her home on a month-to-month basis and took a room in a private home, allegedly for reasons of health, with the declared intention of resuming the occupancy of the home as soon as her health permitted. In addition to the facts stated in the dissenting opinion, reference to the record discloses other facts considered by the lower court in its determination that there had, in fact, been a permanent abandonment of the homestead by the plaintiff despite her declaration that she intended to return to her home at some indefinite time in the future. And, as noted, a majority of the court considered these additional facts sufficient to distinguish the case from that of City of Jacksonville v. Bailey, 1947, 159 Fla. 11, 30 So.2d 529, 530, in which we held that a temporary rental of the home for three months during the winter season did not constitute an abandonment of the homestead for tax exemption purposes.
The constitutional provision here in question, Section 7 of Article X, grants a tax exemption up to an assessed valuation of $5,000 to a homeowner "who resides thereon and in good faith makes the same his or her permanent home * * *." And in City of Jacksonville v. Bailey, supra, we said:
"Continuous physical presence without interruption is not required to constitute a homestead for tax exemption purposes. Temporary absence, regardless of the reason for such, from the homestead, will not deprive it of that character, provided an abiding intention to return is always present."
It will be noted that this is the rule as to "abandonment" of a homestead which had been developed by judicial pronouncement in cases involving the earlier homestead privileges conferred by Sections 1 and 4 of Article X relating to the exemption of homesteads from forced sale and prohibiting their devise where there are children of the homestead owners, which provisions were a part of our constitution as adopted in 1885. See Matthews v. Jeacle, 1911, 61 Fla. 686, 55 So. 865; Lanier v. Lanier, 1928, 95 Fla. 522, 116 So. 867; Nelson v. Hainlin, 1925, 89 Fla. 356, 104 So. 589; Davis v. Miami Beach Bank & Trust Co., 1930, 99 Fla. 1282, 128 So. 817. Section 7 of Article X (the homestead tax exemption privilege) was first proposed as an amendment to our Constitution at the 1933 session of the Legislature and was adopted at the general election in 1934. The 1935 Legislature enacted Chapter 17060, Laws of Florida, Acts of 1935, prescribing the procedure for claiming the tax exemption conferred by Section 7 of Article X; and Section 3 of Chapter 17060 (now appearing as Section 192.14, Fla. Stat. 1953, F.S.A.) specifically provided that
"The words `resident,' `residence,' `permanent residence,' `permanent home' and those of like import, shall not be construed so as to require continuous *216 physical residence on the property, but mean only that place which the person claiming the exemption may rightfully and in good faith call his home to the exclusion of all other places where he may, from time to time, temporarily reside."
This legislative language is but another way of stating that "a temporary absence will not deprive the homestead claimant of his right, unless it appear that there was a design of permanent abandonment," Matthews v. Jeacle, supra [61 Fla. 686, 55 So. 867], and we think it can fairly be said that the Legislature intended to adapt to the homestead tax exemption privilege conferred by Section 7, supra, the rules previously developed by this court with respect to the homestead character of property within the meaning of Sections 1 and 4 of Article X. While this court has not expressly so held in any previous decision, we have done so impliedly by citing cases involving the exemptions granted by Sections 1 and 4 as authority for a decision involving the character of property for the purpose of homestead tax exemption under Section 7, see City of Jacksonville v. Bailey, supra, 30 So.2d 529, and vice versa, see Saint-Gaudens v. Bull, Fla. 1954, 74 So.2d 693, citing the City of Jacksonville case in a judgment creditor suit.
Applying those rules to the facts of the instant case, we think it is clear that there has been no abandonment of the "homestead". The plaintiff-husband did not voluntarily quit the premises; he was ordered to do so. His various places of residence during his tour of duty were, of necessity, only temporary. It is not disputed that the residence in Jacksonville is the only place which the plaintiffs "rightfully and in good faith" call their home "to the exclusion of all other places where [they] may, from time to time, temporarily reside." Section 192.14, supra. Nor is it disputed that the parties intended to resume their residence there at the conclusion of the husband's military service. Clearly, a judgment creditor could not have levied execution against the home during the parties' temporary absence in military service, within the rules stated above; and, as noted, the same rules should be applied to the tax exemption privilege granted by Section 7. We think then that, in the circumstances here, there was no abandonment of the homestead within the meaning of Section 7 of Article X and Section 192.14, supra, and that the lower court erred in so holding.
But did the plaintiffs lose their right to the tax exemption because of their failure to apply for it prior to April 1, 1953? Section 192.16, Fla. Stat. 1953, F.S.A., requires the claim for the exemption to be filed with the tax assessor prior to April 1st of each year, and provides that "the failure to do so shall constitute a waiver of said exemption for such year. * * *" As has been noted, the plaintiffs' claim was not filed until October of 1953. The plaintiffs contend here that their delinquency in this respect will not bar their right to the tax exemption because of the saving provisions of Chapter 21880, Laws of Florida, Acts of 1943, carried forward in Florida Statutes Annotated and the Florida Statutes of 1949 and 1951 as Section 192.55. This statute provided that members of the Armed Forces who were unable to file an application for homestead tax exemption by reason of military service should not be deemed to have waived such right "nor shall any such person be required to file any claim or application for such exemption during the time he or she is in such military service nor for a period of one year after being discharged from such military service." The statute also provided that "This Act shall cease to operate one year after the present hostilities cease." The trial judge was of the opinion that the "present hostilities" referred to in the statute were those of World War II, which had been officially declared at an end in 1946 by Presidential Proclamation, 50 U.S.C.A. Appendix, p. XXII, and that the statute was inadvertently carried forward in the 1949 and 1951 Florida Statutes and was thus ineffective to protect the tax exemption privileges of plaintiffs. The fact *217 that the statute might have been inadvertently included in these compilations is, in our opinion, unimportant. The fact remains that by Chapter 26484, Laws of Florida, Acts of 1951, F.S.A. § 16.19, the Legislature adopted and enacted "the accompanying revision, consolidation and compilation of the public statutes of this state * * * as the only official statute law of this state", so that Section 192.55 was thereby re-enacted into law and was in full force and effect during the months of January, February and March of 1953. These three months are, under Section 192.16, supra, the exclusive season of the year during which a homestead exemption may be claimed by the home owner. Thus, the effect of Section 192.55 was to relieve the plaintiff-husband from meeting the April 1st "deadline" applicable to home owners not in the Armed Forces insofar as his 1953 taxes were concerned. And the fact that Section 192.55 was thereafter repealed by Chapter 28199, Laws of Florida, Acts of 1953, F.S.A. § 192.161 and note (which specifically provided that members of the Armed Forces are required to file a claim for homestead tax exemption and repealed all laws or parts of laws in conflict therewith), cannot affect a right which plaintiffs had acquired and which had become perfected under Section 192.55, prior to its repeal. In other words, the plaintiff-husband's status as a member of a class of persons who were not required to file an application for homestead exemption prior to April 1st was fixed as of that date insofar as his 1953 taxes were concerned; and the new statute, Chapter 28199, supra, is applicable to and can affect only the homestead tax exemption applications of members of the Armed Forces for 1954 and succeeding years, in view of the other provisions of law referred to above.
Nor do we think the fact that the wife was a co-owner of the property with the husband and was present in Jacksonville during the early part of 1953 should deprive them of the benefits of Section 192.55. This statute, like the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A.Appendix, § 501 et seq., was designed for the protection of members of the Armed Forces and, like that Act, should "be read with an eye friendly to those who dropped their affairs to answer their country's call." LeMaistre v. Leffers, 1948, 333 U.S. 1, 68 S.Ct. 371, 373, 92 L.Ed. 429. We think the protection afforded by the statute to the plaintiff-husband extends to his wife.
For the reasons stated, it was error to dismiss the complaint so the decree appealed from is reversed and the cause remanded for further proceedings.
Reversed and remanded.
DREW, C.J., and TERRELL and SEBRING, JJ., concur.