**In re Gregory BRENT, Debtor.**

**Bankruptcy No. 86–135.**

United States Bankruptcy Court,
D. Vermont.

Jan. 12, 1987.

G. Brent, pro se, debtor.

R. Obuchowski, South Royalton, Vt., for movant, Teresa Martin (Martin).

## ORDER ON OBJECTION TO CLAIM OF EXEMPTION PURSUANT TO 11 U.S.C. § 522(d)(1)

FRANCIS G. CONRAD, Bankruptcy Judge.

This proceeding poses the narrow question whether a debtor who erroneously believes he is prohibited by a Court Order from returning to his homestead has abandoned this homestead. Because abandonment must be a voluntary act, we hold that a debtor who is absent under compulsion, whether actual or misapprehended, has not relinquished his right to the homestead.

The debtor filed a voluntary Chapter 7 petition pro se on July 27, 1986. In the petition, the debtor claimed as exempt under 11 U.S.C. § 522(d) a $6,600.00 interest in real property located at 24 Wilson Street, Montpelier, Vermont. This property was listed on the bankruptcy petition as the debtor's homeplace. The debtor's former spouse objected to the claimed exemption, alleging that the debtor abandoned the property some time during January 1986; returned for a few days in April 1986; established a residence and domicile in Shaftsbury, Vermont, on July 6, 1986; and had no intention of returning to the Montpelier property after filing the Chapter 7 petition.

We heard this proceeding on December 3, 1986. Martin called the debtor to testify and introduced in evidence a copy of the parties' Final Order and Decree of Divorce. The debtor introduced a copy of the Court's later amended Order. We took jurisdiction of the proceeding pursuant to 28 U.S.C. § 1334(b).

The testimony at trial showed that debtor and his spouse lived at the Montpelier residence after October 1977. Some time later, the parties separated and the Vermont Superior Court of Washington County entered a Final Order and Decree of Divorce on September 23, 1985. The Divorce Decree became absolute on December 11, 1985. In the Decree, the Vermont Superior Court granted to each party consecutive six-month cross-options to purchase the Montpelier property. The debtor had the first option, which apparently expired unexercised on March 11, 1986. Martin's option began immediately on March 12, 1986 and was also not exercised.

Late in 1985 or early 1986, Martin apparently moved to amend the Final Order and Divorce Decree of September 23, 1985. We did not learn the substance of her motion, but the result was embodied in an amended Final Order and Decree entered on May 27, 1986. The amended Order required that the debtor and his ex-spouse sign an exclusive listing agreement to sell the property at 24 Wilson Street; That they negotiate the ultimate sales price in good faith; that, because the debtor had exclusive possession of the property during the winter of 1985–86, he make certain repairs and bear the cost; that each party bear the cost of painting the residence; that the proceeds of the sale be allocated to the parties after paying certain liens; that each party execute the instruments necessary to effectuate the Order; and, finally, that but for the changes made by this Order, the Order of September 25, 1985 remained in full force and effect.

There is no dispute that on the date he filed the bankruptcy petition the debtor did not live at 24 Wilson Street, the Montpelier property listed as his homeplace. He testified, rather vaguely, that he resided at a farm in Shaftsbury, Vermont, although he kept no room there and did not pay for room or board. He stayed at different places in Shaftsbury and received his mail at a Shaftsbury post office box. The debtor explained that he was absent from the Montpelier property for two reasons. First, because of his itinerant employment as a nurse, it was his practice to live and work at some distance from his homeplace, but always, at least since 1977, he regarded 24 Wilson Street as his homeplace. Secondly, he did not reside at 24 Wilson Street because, in his own words, "a Court Order overrode my intention to return." Earlier in the hearing, the debtor had stated that the Court Order in July (actually, May) required him to sell his homestead, preventing him from going back.

The debtor maintains that he did not acquire another homestead by residing in Shaftsbury on the date of his petition, and that he intended to return to the Montpelier property, which he considered his homestead, had he not been restrained by the prohibition he perceived in the Court's Order. Although the amended Order of May 27, 1986 required the parties to sell 24 Wilson Street, the Order nowhere forbid debtor to reside at the property.

■ Owing to the debtor's work, he was frequently absent from the homestead, which he left some time in January 1986, and to which he returned for a few days in April. When he filed the bankruptcy petition, the date as of which homestead rights are determined, *In re Bernstein*, 62 B.R. 545, 550 (Bkrtcy.D.Vt.1986), the debtor resided in Shaftsbury. We find that the residence in Shaftsbury was a temporary accommodation to the exigencies of debtor's employment and did not create a new homestead. See *In re Estate of Wolff*, 108 Vt. 54, 56, 182 A. 187 (1935) (occupancy for a temporary purpose insufficient to establish homestead).

■ The objecting party has the burden of proving that the debtor is not entitled to a claimed homestead exemption. *In re Johnson*, 61 B.R. 858, 864 (Bkrtcy.D.S.D. 1986); Rules of Bankruptcy Procedure 4003(c). Martin has pointed to no cogent

evidence contradicting the debtor's statements. We are troubled by the debtor's asserted misunderstanding of the State Court's amended Order in light of his pro se bankruptcy petition, which was a model of clarity, and the sophisticated understanding of homestead rights that his testimony revealed. Nevertheless, in our capacity as trier of fact, we think it plausible that the debtor misinterpreted the Court's order to sell the homestead as implicitly prohibiting him from occupying it. Therefore, we find that the debtor maintained an intention to return but believed he was prohibited from doing so by the Court's Order. Applying the law of homestead to these facts, we must decide whether the debtor abandoned the claimed homestead.

The debtor elected in his bankruptcy petition, Schedule B–4, to exempt his homestead pursuant to 11 U.S.C. § 522(d)(1). This provision states:

> The following property may be exempted under subsection (b)(1) of this section: (1) The debtors' aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

Since the debtor elected to use the federal exemptions, federal law applies. 11 U.S.C. § 522(d)(1) refers to the debtor's interest in real or personal property that the debtor uses as a residence. The legislative history indicates that the homestead exemption derived in large part from the Uniform Exemption Act, promulgated by the Commissioners of Uniform State Laws in August 1976. H.Rep. No. 95–595, 95th Cong., 1st Sess. 361 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. The legislative history uses the term "homestead" rather than the term "residence" used in the statute. We assume that Congress intended the words

homestead and residence to be interchangeable.

Aside from the meager legislative history, there is little law addressing the federal homestead exemption. See Collier on Bankruptcy, 15th ed., pages 522–48, 522–49 (paraphrasing testimony before the legislature). Because most states have opted out of the federal exemptions, there are few decisions specifically interpreting this exemption.

A homestead is a property interest. Property interests are not created by the Constitution, but by existing rules or understandings that stem from an independent source such as State law. *Ruckelshaus v. Montsanto*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984), citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980), quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). See also *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136, (1979).

Moreover, the homestead right recognized by Congress in 11 U.S.C. § 522(d)(1) reflected a due regard for the adjustment of local and national interests. The opt-out provision in § 522(b)(1) represented a compromise that reinforced the relations between coordinate political authorities. See the remarks of Senator DeConcini and Representative Edwards, S 17412 (daily ed. Oct. 6, 1978); 124 Cong.Rec. H 11095 (daily ed. Sept. 28, 1978).

In this case, the federal homestead exemption is not notably different from Vermont's homestead statute.[1] Both require occupancy, either actual or constructive. Under both, absence alone is not sufficient to constitute an abandonment unless an intent to abandon is shown. See Collier on Bankruptcy, 15th ed., 522–49; *In re White*, 18 B.R. 95, 97 (Bkrtcy.D.Vt.1982). We be-

---

**1.** 27 V.S.A. § 101 provides: "The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $30,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits and products thereof, shall be exempt from attachment and execution except as hereinafter provided."

lieve it appropriate to turn to Vermont case law to decide if the debtor abandoned his homestead on the date he filed his petition, and when that law is silent, to use the law of other states. See *United States v. Crain*, 589 F.2d 996, 999 (9th Cir.1979) (Court is free to adopt state law on federally based claim if state law does not conflict with federal policy).

■ Once a property has become a homestead, it can lose its character only through death, alienation, or abandonment. See *Sakowitz v. McCord*, 162 S.W.2d 437, 439 (Tex.Ct.App.1942). Typically, the homestead is abandoned when the debtor either sells the property or establishes a new homestead. When a homestead is no longer used as a homestead, however, regardless whether another homestead has been acquired, the homestead has ceased to exist. *In re White*, 18 B.R. 95, 97 (Bkrtcy. D.Vt.1982); *Cushman v. Davis*, 79 Vt. 111, 118–120, 64 A. 456, 45 A.L.R. 400 (1906). On the other hand, if a debtor intends to return to the homestead, then the homestead has not been abandoned and remains exempt during the intervening absence. See *West River v. Gale*, 42 Vt. 27, 33–34 (1869). The deciding consideration in determining whether the debtor's absence represents an abandonment of the homestead is whether the debtor has an intention to return. See *In re White*, 18 B.R. 95, 97 (Bkrtcy.D.Vt.1982); *In re Wolff*, 108 Vt. 54, 57, 182 A. 187 (1936); *Thorp v. Wilbur*, 71 Vt. 266, 270, 44 A. 339 (1899); *Whiteman v. Field*, 53 Vt. 554, 556 (1881). Compare *In re Bernstein*, 62 B.R. 545, 549 (Bkrtcy.D.Vt.1986) (clear intent to sell the homestead, in the future, without more, cannot establish a present abandonment of the homestead). A debtor's intent to maintain or abandon the homestead must be determined in relation to the surrounding exigencies. *In re Neis*, 723 F.2d 584, 590 (7th Cir.1983).

■ The precise question we need to decide in this case is whether a debtor's failure to return to a homestead because of a mistaken belief that a Court Order prohibited his return constitutes an abandonment of the homestead despite the debtor's abiding intention to return.

The homestead exemption should be liberally construed. *Bugbee v. Bemis*, 50 Vt. 216, 219 (1877); *In re Cycyk*, 29 B.R. 722, 724 (Bkrtcy.N.D.Ohio 1983). The law does not favor abandonment of a homestead. *In re Turner*, 44 B.R. 118, 119 (Bkrtcy.W. D.Mi.1984). Absence from the homestead that is involuntary or compulsory does not constitute a relinquishment of homestead rights; in order to constitute an abandonment of a homestead, the absence must be voluntary and not under compulsion. 40 C.J.S. § 166(b); 40 Am.Jur.2d § 182.

An injunction against the use or occupancy of property as a homestead will not deprive the enjoined owner of a homestead exemption. *Sakowitz v. McCord*, 162 S.W.2d 437 (Tex.Ct.App.1942). Despite a Decree and Restraining Order, the excluded party continues to enjoy homestead rights until he expresses an intention not to return and occupy the home. *In re Gullickson*, 39 B.R. 922 (Bkrtcy.W.D.Wis. 1984); *In re Cycyk*, 29 B.R. 722 (Bkrtcy.N. D.Ohio 1983); *Sykes v. Speer*, 112 S.W. 422 (Tex.Ct.App.1908). Delivering possession of the house in response to a Decree will not operate as a waiver of the homestead right. *Kuttner v. Haines*, 135 Ill. 382, 25 N.E. 752 (1890). Nor may a debtor lose homestead rights by being driven from the property by a Court Order in a contested divorce proceeding if she intended to retain the homestead rights notwithstanding her absence. *Novotny v. Horecka*, 200 Iowa 1217, 206 N.W. 110, 42 A.L.R. 1158 (1925). Homestead rights are not abandoned by the conduct of a wife in leaving her husband because of his cruelty even if there is no divorce or separation agreement. *O'Neal v. Miller*, 143 Fla. 171, 196 So. 478, 129 A.L.R. 295 (1940). See also *In re Smith*, 57 B.R. 81 (Bkrtcy.W.D.N.Y.1985) (absence from the marital abode pending resolution of property rights does not constitute abandonment of homestead under New York Civil Practice Law and Rules dealing with the homestead exemption). Consequently, because a homestead can only be relinquished voluntarily, we hold that a debtor prevented by a Court's Order from returning to the homestead has not

abandoned the homestead by virtue of such enforced absence.

We have found that, except for the prohibition against returning he mistakenly read into the State Court's order to sell the property, the debtor intended to return to the homestead. In its effect on the debtor's intention, however, a perceived prohibition is indistinguishable from an actual prohibition. If an Order forbidding the debtor from returning to the homestead represents compulsion of a kind that cannot defeat homestead rights in the face of an abiding intention to return, then a sincerely held belief in the existence of such an Order represents an equivalent compulsion and is equally ineffective to vitiate the debtor's intention. Consistent with the underlying policy of the homestead exemption, a debtor whose intention to return home was thwarted by a Court Order that he sincerely but erroneously believed forbid him to occupy the property cannot in good conscience be treated as though he voluntarily abandoned the homestead. We conclude that Martin has failed to carry the burden of establishing that the debtor is not entitled to exempt his interest in the property at 24 Wilson Street, Montpelier.

Accordingly, we ORDER that the objection of Teresa Martin be OVERRULED.