**In re Brenda Michelle ANDERSON, Debtor.**

**Bankruptcy No. 99–61187–LK.**

United States Bankruptcy Court, W.D. Texas, Waco Division.

Oct. 12, 1999.

James O. Cure, Temple, TX, for Debtor.

Ray Hendren, Austin, TX, Chapter 13 Trustee, pro se.

## MEMORANDUM OPINION REGARDING TRUSTEE'S OBJECTION TO DEBTOR'S SCHEDULE OF EXEMPTIONS

LARRY E. KELLY, Chief Judge.

On September 8, 1999, came on for hearing the Objection to Debtor's Schedule of Exemptions (the "Objection") filed by Ray Hendren, the Chapter 13 trustee (the "Trustee") appointed in the above-referenced case. The Trustee and the Debtor, through her counsel, appeared at the hearing and stipulated to the relevant facts, as described below. The court, having considered those facts and the arguments of counsel presented at the hearing, makes the following findings of fact and conclu-

sions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 (applicable to this contested matter under F.R.Bankr.P. 9012) in support of its order, entered contemporaneously herewith, overruling the Trustee's Objection.

## FACTUAL BACKGROUND

As stated above, the relevant facts in this matter are not in dispute. The Debtor resides in Bell County, Texas, as a member of the armed services stationed at Fort Hood. Her tour of duty will last three years. She is the owner of a tract of residential real property located in Goose Creed [*sic*], South Carolina (the "Property"), which she claims as her exempt homestead under 11 U.S.C. § 522(d)(1). The Property is the only real estate owned by the Debtor. She purchased it in July of 1992, and resided there continuously with her family until February, 1998, when she was transferred by the Army to Texas. On May 27, 1999, the Debtor filed a voluntary petition under Chapter 13, commencing this case. On that day, and since then to the present, she has lived in Bell County with her family. Since moving from the Property, she has not attempted to purchase any other homestead. The Property is currently rented by the Debtor to a third party "to defray expenses." South Carolina is listed on her military records as her "home." She intends to return to South Carolina and the Property and resume living there when she leaves the Army.

## ANALYSIS

■ Section 522(d)(1) provides, in relevant part, that a debtor may exempt his or her "aggregate interest, not to exceed $16,150 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence. . . ."

The Trustee argues that under the plain meaning of the phrase, since the Debtor did not physically occupy the Property at the time the bankruptcy case was filed, it was not "use[d] as a residence" by her on the petition date and therefore cannot be exempted. The Debtor responds in essence that because the Property was at one time her homestead, she moved from it only because of her transfer by the Army, and she intends to return to it and live there, she may claim it as exempt under § 522(d)(1).

■ There are relatively few reported decisions under § 522(d)(1).[1] This court, like others analyzing the section, finds that it should be interpreted in light of the goal of the exemption: to protect a debtor's family home. *In re DeMasi*, 227 B.R. 586, 588 (D.R.I.1998). Thus, the term "residence" as used in the section is equivalent to "homestead." *Makoroff v. Buick (In re Buick)*, 237 B.R. 607, 610 (Bankr.W.D.Pa. 1999) (citing H.R.Rep. No. 95–595, at 361 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6317); *accord, In re Tomko*, 87 B.R. 372, 374 (Bankr.E.D.Pa.1988); *In re Brent*, 68 B.R. 893, 895 (Bankr.D.Vt.1987). This interpretation is appropriate, considering that there is no express definition of "residence" in the Bankruptcy Code, and because the section's legislative history refers to a "federal homestead exemption"

---

1. It has been suggested that few cases were decided under § 522(d)(1) prior to the 1984 amendments to the Bankruptcy Code because of a debtor's ability to use the "wildcard" exemption of § 522(d)(5) to apply the full unused homestead exemption to any property of the estate he desired, so that if property did not qualify as homestead under § 522(d)(1), it could be exempted to the same extent under § 522(d)(5). *In re Tomko*, 87 B.R. 372, 374 (Bankr.E.D.Pa.1988). Section 522(d)(5) was amended in 1984 to limit the value of the wildcard exemption to only 50% of the unused homestead exemption. *Id.*

Another explanation for the lack of litigation under § 522(d)(1) is the "opt-out" provision in § 522(b)(1), providing that the exemptions of § 522(d) are available only if the debtor's state has not "opted out" of such federal bankruptcy exemptions, limiting the debtor to the state's and federal non-bankruptcy exemptions. *In re Brent*, 68 B.R. 893, 895 (Bankr.D.Vt.1987). As of December, 1998, 34 states had "opted out."

and to "property which the debtor 'owned and used at the date of the petition as a home ....'" *Tomko,* 87 B.R. at 373–74 (citing Report of The Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, pt. 1, at 170–73 (1973)).

■ A homestead is a property interest. *Brent,* 68 B.R. at 895. Ordinarily, "property interests and estates are to be dealt with in the bankruptcy courts in such manner as to give full respect to the rules of property followed in the state where the property is located." *Community National Bank and Trust Company of New York v. Persky (In re Persky),* 134 B.R. 81, 85 (Bkrtcy.E.D.N.Y.1991), quoting *Reid v. Richardson,* 304 F.2d 351, 353 (4th Cir. 1962). The Supreme Court in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), discussed the general rule:

> Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law....Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

*Id.* at 54, 55, 99 S.Ct. 914 (footnotes omitted).

Whether § 522(d)(1) manifests such an overriding federal interest is, however, not clear. On the one hand, it was enacted for the purpose of providing a uniform, minimum exemption available to (originally, at least) all states' citizens as an express alternative to the various state law homestead exemptions (or lack of homestead exemption). L. King, 5 *Collier on Bankruptcy* ¶ 522.02[1] at p. 522–12–13 (15th ed. rev.1998). On the other hand, Congress has permitted each state to "opt out" and prohibit its citizens altogether from using § 522(d)(1) and the other federal bankruptcy exemptions. *See* 11 U.S.C. § 522(b)(1).

What is clearer is that bankruptcy courts that have interpreted § 522(d)(1), whether because of the lack of precedent under that section or in deference to state law on issues involving property rights, have turned "to relevant state law in order to fill in the gaps regarding a debtor's exemption of a homestead" under § 522(d)(1). *Buick,* 237 B.R. at 610; *see also Brent,* 68 B.R. at 895–96 ("We believe it appropriate [in interpreting § 522(d)(1)] to turn to Vermont case law to decide if the debtor abandoned his homestead on the date he filed his petition, and when that law is silent, to use the law of other states.").

■ This court has not conducted an extensive independent investigation of the homestead laws of the various states.[2] Based on its limited review, it appears that, at least with respect to the narrow issue at hand, those laws are fairly similar to each other and are not in conflict with the federal policy behind § 522(d)(1).[3] As

---

**2.** Arguably, this court might be justified in looking only as far as Texas homestead law, since it is the law of the forum and the parties did not plead or argue, let alone offer any evidence, that any other state's law is even relevant. "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Wood v. Mid–Valley Incorporated,* 942 F.2d 425, 426 (7th Cir.1991). While this is clearly a case involving the interpretation of a federal statute and not a diversity action, the guidance that state law can provide on the issue at hand, in light of the lack of precedent under § 522(d)(1), is undeniable.

**3.** Because of the nature of the issue presented and the vital interest of a state in the real property located within its boundaries, in interpreting § 522(d)(1) this court has given particular consideration to the homestead law of South Carolina where the Property is located. Based on its review of that law, although not detailed or exhaustive, this court is convinced that the law of South Carolina is not expressly contrary to the law of the majority of jurisdictions regarding involuntary absence

the Bankruptcy Court in Buick noted, there are certain rules that appear to be common to most states' homestead laws:

(a) a property does not constitute a homestead unless it is occupied, either actually or constructively, ...

(b) "[o]nce a property has become a homestead, [however,] it can lose its character [as such] only through death, alienation, or abandonment," ...

(c) "[a]bsence from the homestead that is involuntary or compulsory does not constitute a relinquishment of homestead rights; in order to constitute an abandonment of a homestead, the absence must be voluntary and not under compulsion," ... and

(d) an involuntary or compelled absence from the homestead thus constitutes either an exception to the homestead occupancy requirement, ... or a constructive form of occupying a homestead.

*Buick,* 237 B.R. at 610 (citations omitted).

It is stipulated in this case that the Debtor did occupy the Property at one time prior to the filing of this case, but did not physically or actually occupy the Property on the date her bankruptcy petition was filed. The issue is therefore whether, on that date, the Debtor constructively occupied the Property or, stated differently, whether the Property had been abandoned by the Debtor as her homestead.

 Although "[g]enerally, a residence will refer to a home that a debtor owns and occupies at the time of the filing," § 522(d)(1) should not be so mechanically applied as to require actual occupancy by the debtor on the petition date. *DeMasi,* 227 B.R. at 588. Obviously, it makes no sense to require that a debtor be continuously physically present on the property in order to claim it as a homestead. Clearly, a temporary absence of short duration—a trip to the grocery store, a weekend at a relative's, a month's vacation out of state—does not operate as a *per se* abandonment of a homestead. It is not,

and abandonment of one's homestead, as dis-

then, the physical absence alone that defeats a homestead claim. Rather, abandonment depends upon the debtor's intent. *Brent,* 68 B.R. at 896 (under § 522(d)(1), as under state law, the "deciding consideration in determining whether the debtor's absence represents an abandonment of the homestead is whether the debtor has an intention to return").

 The proffered testimony of the Debtor was that her intent is to return to the Property and to occupy it as her home. In addition to considering her direct testimony on the issue, the court may infer her intent from her actions and other circumstances. *In re Neis,* 723 F.2d 584, 590 (Bkrtcy.D.Vt.1987); *accord, Brent,* 68 B.R. at 896. Certainly, physical absence from the Property is one factor. However, the reason for, and the nature of, the Debtor's absence from the Property are also relevant on the issue of intent. In particular, if the Debtor's service in the military is an "involuntary or compelled" absence from the Property, such absence might not be evidence of an intent to abandon the homestead. Similarly, her rental of the Property in her absence would appear relevant to whether she intended to abandon it as her homestead or not.

In the recent case of *Makoroff v. Buick (In re Buick),* 237 B.R. 607 (Bankr. W.D.Pa.1999), the Bankruptcy Court was faced with an issue under § 522(d)(1) similar to that in this case. The debtor in Buick had ceased to occupy the property in question in compliance with a court order entered in connection with his separation from his wife. The court found that the property had become the debtor's homestead when it was purchased and physically occupied by him prior to the bankruptcy filing, and that he had not abandoned it as his homestead when he physically vacated it, because "his absence ... was involuntary and compelled by the Pennsylvania Common Pleas Court order...." *Id.* at 611. The Court therefore

cussed below.

held he was entitled to claim it on the date he filed his bankruptcy case as his homestead under § 522(d)(1).

The courts that have addressed the issue of abandonment of a homestead claimed under § 522(d)(1) are few, but they are unanimous in holding that an involuntary temporary absence from the property does not operate *per se* as an abandonment. In *In re Brent*, 68 B.R. 893, 894 (Bankr.D.Vt.1987), the bankruptcy Court held that the debtor's living away from the property claimed as homestead under § 522(d)(1) "was a temporary accommodation to the exigencies of debtor's employment and did not create a new homestead," and because such absence was due also in part to his mistaken belief that a court order required it, he had not abandoned the property as his homestead. Similarly, in *In re DeMasi*, 227 B.R. 586 (D.R.I.1998), the District Court held that the debtor's absence from the property as a result of its exclusive occupancy by a relative of the debtor under a life estate did not establish abandonment of the debtor's homestead claim. Finally, in *Smith v. Wellberg (In re Wellberg)*, 12 B.R. 48 (Bkrtcy.E.D.Va.1981), the Bankruptcy Court in *dicta* stated that the debtors, who were in the Navy stationed in Virginia, could "easily protect" their real property in Minnesota as their homestead under § 522(d)(1), since Minnesota, the state of their domicile, permitted use of that section by not "opting out" of the bankruptcy exemptions.

Various state courts, including several in Texas, have held that not occupying a homestead due to service in the military, in the absence of evidence showing an intent not to return to the homestead, does not constitute an abandonment. *See e.g., Henderson v. Ford*, 46 Tex. 627 (1877); *Markley v. Barlow*, 204 S.W. 1013 (Tex. Civ.App.—San Antonio 1918, writ ref'd); *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325 (1948); *L'Engle v. Forbes*, 81 So.2d 214 (Fla.1955).

Considering these decisions and those interpreting § 522(d)(1) discussed above, this court finds that absence from a homestead due to service in the military is involuntary and compelled and that such absence, in and of itself, does not constitute abandonment of the serviceman's homestead under § 522(d)(1).

On the petition date in this case, not only was the Debtor not occupying the Property, but she was actually renting it to a third party, "to defray expenses." The temporary leasing of a homestead to a third party also does not compel a finding of abandonment. *See e.g.*, Tex. Const. Art. 16, § 51 *("* any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired"); *In re Inmon*, 137 B.R. 757 (Bankr.E.D.Ark.1992) (renting property and even listing it for sale did not constitute abandonment of the homestead under Arkansas law, where the debtor testified that she intended to return to her residence and at all times considered it her home); *McClenaghan v. McEachern*, 47 S.C. 446, 25 S.E. 296, 297 (1896) (holding that "it cannot be said, as a matter of law, that the mere renting for a year of this 30-acre tract constituted an abandonment" of it as part of the debtor's homestead).

Rental of a residence during the time the owner is out of state serving in the military is not necessarily inconsistent with an intent to return to the property and occupy it as the owner's home. Indeed, it can be a way of safeguarding and preserving the property pending the owner's return. In this case, the court finds that it does not *per se* constitute abandonment of the Property.

The facts as stipulated by the parties in this case are few. Nothing was mentioned regarding such matters as where the Debtor votes and whether her furniture was left with the Property, brought with her to Texas, or has been disposed of. Because counsel stipulated to the facts, the court obviously has not had the opportunity to judge the Debtor's credibility as far

as her stated intention to return to the Property. However, based on the uncontroverted facts and the foregoing authorities, and considering § 522(d)(1)'s policy of protecting the family home, this court finds and concludes that up to $16,150 of the value of the Property may exempted by the Debtor under that section. An order consistent with this Opinion shall be entered.