### In re Rejean E. ROBERGE and Jeannett A. Roberge, Debtors.

### No. 03–11135.

United States Bankruptcy Court, D. Vermont.

March 29, 2004.

---

Gleb Glinka, Glinka & Schwidde, Cabot, VT, for Debtors.

Douglas J. Wolinsky, Eggleston & Cramer, Ltd., Burlington, VT, Trustee, Pro Se.

### ORDER OVERRULING TRUSTEE'S OBJECTION TO EXEMPTION

COLLEEN A. BROWN, Bankruptcy Judge.

This matter presents a question of Vermont exemption law of first impression: namely, whether, in the absence of fraud, spouses who have been living separate and apart prior to filing for bankruptcy relief, may each claim, under the Vermont homestead exemption statute, the real property in which they reside as exempt in their joint bankruptcy case. This Court answers the question in the affirmative and holds that the estranged spouses may each exempt the homestead in which they reside, notwithstanding that they are in a joint bankruptcy case, provided there has been a thorough scrutiny of the facts and a deliberate determination that no fraud is being perpetrated.

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334.

### I. PROCEDURAL BACKGROUND

On October 2, 2003, Douglas J. Wolinsky, Esq., in his capacity as the chapter 7 trustee ("the Trustee"), filed an Objection to Debtors' Claims of Exemption, disputing the Debtors' exemption of two parcels of real estate as their separate homesteads. On November 10, 2002, the Debtors filed an Opposition to Trustee's Objection to Claimed Exemptions, asserting that since the Debtors were separated and living apart because of marital discord, and for reasons that had nothing to do with the treatment of their creditors, they were each entitled to an exemption under Vermont's homestead exemption statute. *See* 27 V.S.A. § 101. On December 18, 2003, the parties filed Stipulated Proposed Findings of Fact and, approximately one month thereafter, they each filed a memorandum of law.

## II. THE FACTS

The essential material facts are undisputed. As set forth in their Stipulated Proposed Findings of Fact, the parties agree to the following facts for purposes of this contested matter.

On April 22, 1991, Rejean E. Roberge purchased real property at 56 Eastern Avenue in Newport Center, Vermont ("the Eastern Avenue Property") and he remains the sole owner of this property. The Eastern Avenue Property is subject to a first mortgage dated December 17, 1998, and to a second (home equity) mortgage dated February 24, 1995, on which Rejean E. Roberge is the sole obligor. Mr. Roberge makes the payments for both mortgages against the Eastern Avenue Property (including the property taxes and insurance).

On August 10, 1996, the Debtors were married and Jeannett Roberge moved into the Eastern Avenue Property.

On August 22, 2001, Rejean and Jeannett Roberge purchased real property on Searles Road in Newport Center, Vermont ("the Searles Road Property"), as husband and wife, for $25,000. The Roberges raised the money to purchase the Searles Road Property by drawing $5,000 from Mr. Roberge's home equity loan, taking cash advances from Mr. Roberge credit card, and utilizing savings the couple had accumulated.

On September 10, 2002, the couple permanently separated and Mrs. Roberge moved into the Searles Road Property. Since that date, Mr. Roberge has continued to reside in the Eastern Avenue Property with one of the couple's children, and Mrs. Roberge has resided in the Searles Road Property with the couple's three other children. Mrs. Roberge has paid the property taxes and insurance for the Searles Road Property since the date of separation.[1]

On May 5, 2003, Mr. Roberge first contacted the office of attorney Gleb Glinka. Previously, in January 2003, Mr. Roberge had spoken by telephone with another attorney about his financial difficulties, but he did not attend the subsequently scheduled appointment with that attorney. Mrs. Roberge consulted Legal Aid and a divorce attorney by telephone around the time of her separation from Mr. Roberge, but she did not retain counsel. On July 29, 2003, the Roberges jointly filed for protection from their creditors under chapter 7 of the Bankruptcy Code.

The Trustee has not alleged that the Debtors' separate living arrangements were made for any fraudulent purpose or undertaken to manipulate the bankruptcy system, to hinder, delay or defraud creditors, or to violate the spirit of the Bankruptcy Code.

## III. THE VERMONT STATUTE AND CASE LAW

There is no dispute that Vermont has "opted out" of the federal bankruptcy exemption scheme and that the Debtors have the right to declare exemptions in their bankruptcy case under Vermont law. The pertinent Vermont exemption statute provides:

### § 101. Definition; exemption from attachment and execution

The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $75,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits and products thereof, shall be exempt from attachment and

---

1. There is no mortgage on the Searles Road Property.

execution except as hereinafter provided.

27 V.S.A. § 101. It is settled law that one must reside in the subject property at the time he or she files a bankruptcy petition in order to declare it exempt as one's homestead. *See Pierce v. Pierce (In re Pierce)*, 2003 WL 22860034 (Bankr.D.Vt. 2003); *In re Brent*, 68 B.R. 893, 895 (Bankr.D.Vt.1987); *In re White*, 18 B.R. 95, 97 (Bankr.D.Vt.1982). In those states which have opted out of the bankruptcy exemption scheme set forth in 11 U.S.C. § 522, the language of the relevant state exemption statute determines the scope and application of the exemption provision. *See In re Brent*, 68 B.R. at 895.

■ Since Vermont is an opt-out state, this Court has been called upon to interpret Vermont's homestead exemption statute under different scenarios. For example, shortly after the enactment of the Bankruptcy Code, this Court was asked to determine whether a husband and wife, residing in the same property, could file separate bankruptcy cases and each take the full homestead exemption on the same property. *See In re D'Avignon*, 34 B.R. 790 (Bankr.D.Vt.1981) (Marro, J.). After ordering the spouses' cases to be administered jointly, Judge Marro ruled that where a husband and wife are living in the same home, they are limited to one homestead exemption under 27 V.S.A. § 101. *See id.* at 794. One of the grounds for his ruling was that the intention of Vermont's homestead exemption statute was "to preserve a home for the family." *Id.* at 793. Judge Marro relied upon the Vermont Supreme Court case of *Hyser v. Mansfield*, 72 Vt. 71, 47 A. 105 (1899), in which a single male acquired property to use as a residence for himself and his mother, for the proposition "that the purpose of the homestead statute is to protect the family as a unit whether it consists of a husband

and wife or any other natural person." *Id.* On appeal, the district court affirmed this Court's ruling, stating, "Debtors, as husband and wife, living together in the same family home, are only entitled to one homestead exemption not to exceed $30,00 [now, $75,000] in value." *D'Avignon v. Palmisano (In re D'Avignon)*, 34 B.R. 796, 800 (D.Vt.1982). Amalgamating the rationale of *D'Avigon* with that of *Hyser v. Mansfield* leads me to conclude that the Vermont statute limits debtors to one homestead *per family*. This conclusion is the foundation for my analysis.

## IV. THE ISSUES PRESENTED

Against the backdrop of the Vermont homestead statute and Vermont's opting out of the federal exemption scheme, the instant Objection to Exemptions presents two issues: (1) how may the Vermont homestead exemption statute be used "to protect the family as a unit" when a husband and wife are not living together in the same family home?; and (2) can each spouse claim a homestead exemption in his or her own family home if the two spouses have filed a joint bankruptcy case?

## V. DISCUSSION

■ In constructing my rationale for answering these questions, I rely on building blocks available from five sources: (1) case law from other jurisdictions addressing similar questions regarding similar statutes; (2) general principles about how Vermont's exemption provisions should be construed; (3) basic rules of statutory construction; (4) the universe of relief available via alternative procedural vehicles; and (5) the legislative intent underlying the Vermont homestead provision.

Other courts have addressed very similar questions, and though their rulings turn upon the specific language of their respective state exemption laws, they have

reached conclusions about how to allocate homestead exemptions between spouses which inform the instant dispute. First, the Second Circuit has held that the New York homestead exemption statute allows each spouse to take full advantage of the homestead exemption limit in a joint case, thus permitting a husband and wife to aggregate their homestead exemptions. *See John T. Mather Memorial Hosp. v. Pearl,* 723 F.2d 193, 194 (2d Cir.1983) (finding that the language of the State's opt-out statute specifically allowed an "individual debtor" to exempt property, supporting the legislature's intent to allow aggregation of the homestead exemption). Subsequently, our sister bankruptcy court in Colorado held that under Colorado state law, debtors in a joint case who live apart can each claim a homestead exemption in the property in which he or she resides. *See In re Pastrana,* 216 B.R. 948 (Bankr. D.Colo.1998). Then, more recently, and most similar to the instant issue, the Eleventh Circuit ruled that Florida's constitutional homestead exemption allows estranged spouses, living apart and absent evidence of any fraud suggesting that they were not legitimately living apart, to each claim an exemption in his or her separate homestead. *See In re Colwell,* 196 F.3d 1225 (11th Cir.1999). Thus, there is precedent for the position advocated by the Debtors.

■ This Court and the Vermont Supreme Court have consistently held that exemption statutes must be construed liberally in favor of debtors. *See Delaney v. Obuchowski (In re Delaney),* 268 B.R. 57 (D.Vt.2001) (citing *Parrotte v. Sensenich (In re Parrotte),* 22 F.3d 472, 474 (2d Cir.1994)). "The homestead exemption has been repeatedly recognized in [the Vermont Supreme Court] as being humane in its character, and the statute should receive a liberal construction in view of the

objects aimed at by it." *In re D'Avignon,* 34 B.R. at 793, *affirmed* 34 B.R. 796; *see also Jewett v. Guyer,* 38 Vt. 209 (1865). "Because the homestead statutes are remedial, the statutes are to be interpreted liberally to accomplish their remedial purpose." *Mercier v. Partlow,* 149 Vt. 523, 524, 546 A.2d 787 (1988). Likewise, this Court recognizes that the intention of Vermont's homestead exemption is to preserve a home for the family. *See In re Detko,* 290 B.R. 494, 500 (Bankr.D.Vt.2003); *In re Evans,* 51 B.R. 47, 50 (Bankr.D.Vt.1985). "Generally speaking, the word 'homestead' is used in popular parlance to describe the home or residence of the family; the term signifies the dwelling house in which the family resides . . . ." *In re Avery,* 41 B.R. 224, 225 (Bankr.D.Vt.1984).

■ In ascertaining the import of this particular exemption provision, I rely on this Court's previous instruction that "[a]s a general rule, a statute should be read according to its literal terms, unless it is otherwise demonstratively at odds with the intentions of the statute's drafters." *In re Gabelhart,* 138 B.R. 425, 426 (Bankr.D.Vt. 1992) (Conrad, J.) (internal quotations omitted). In interpreting statutory terms, a court will look to the whole statute including "its subject matter, the effect and consequences, and the reason and spirit of the law." *Sagar v. Warren Selectboard,* 170 Vt. 167, 171, 744 A.2d 422 (1999). In this instance, the statute speaks of the homestead that "a natural person" may exempt. It is significant that the statute does not describe the right as belonging to a debtor or obligor (which might be understood to be more than one person). The language of the Vermont homestead exemption statute is unambiguous and should not be stretched beyond its common meaning.

The next step is to examine what practical alternatives, if any, the parties have

available to them for obtaining the relief they seek. In this instance, but for § 302 of the Bankruptcy Code,[2] Mr. and Mrs. Roberge would have been required to file separate bankruptcy cases and, within their individual cases, they could have each exempted the property in which they each reside as their respective homesteads. Although this is not a determinative factor, it is certainly relevant. While there is nothing in the record addressing why the Debtors chose to file a joint case, one can observe that a joint filing is less expensive than two separate cases, places less administrative burden on the Debtors than two individual cases, serves the convenience of the Debtors' joint creditors, and simplifies the Debtors' financial affairs. One of Congress' primary considerations in passing § 302 was that the cost of administering the husband's and wife's respective estates would be reduced and the couple would have to pay only one filing fee. *See* H.R. REP. No. 595, 95th Cong. (1st Sess. 1977); S. REP. No. 989, 95th Cong., (2d Sess. 1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787. It would be unfair to penalize the Debtors for pursuing economic and administrative expedience, especially when the Bankruptcy Code contemplated using § 302 for that purpose and there is nothing in the record indicating that the Debtors filed a joint bankruptcy case for any fraudulent or improper purpose.

I next consider whether the legislative purpose of the Vermont homestead statute will be violated if married debtors who are legitimately living apart in separate properties are both allowed to claim a homestead exemption in their respective homes where each lives with their children. There is no legislative history that sheds

any light on this issue, but the plain language of the homestead exemption statute leaves little doubt about the Legislature's intent. Vermont's homestead exemption statute speaks in terms of "a natural person," in the singular. *See* 27 V.S.A. § 101. Thus, a literal application of the statute would appear to authorize married debtors to each claim a mutually exclusive homestead exempt as each is a "natural person".

At the time it enacted 27 V.S.A. § 101, the Vermont Legislature may not have anticipated the inquiry of whether estranged spouses could each claim a homestead exemption in their separate properties. The case law instructs that spouses living in the same property cannot each exempt $75,000 of value in that property, and also that the purpose of the homestead statute is to protect the family as a unit. *See In re D'Avignon*, 34 B.R. at 793. This distills the question down to what is "a family" for purposes of Vermont's homestead exemption law. Almost twenty-five years ago, this Court held that a family consists of a husband and wife or any other natural person. *See id.* However, the definition of family is not static, but rather, evolving. According to Black's Law Dictionary, the meaning of "family" necessarily depends on: (1) the field of law in which the word is used; (2) the purpose to be accomplished by its use; and (3) the facts and circumstance of each case. *See* BLACK'S LAW DICTIONARY 604 (6th ed.1990). In its most recent edition, one of the definitions of a "family" Black's provides is: "2. A group of persons connected by blood, by affinity, or by law." BLACK'S LAW DICTIONARY 620 (7th ed.1999). Significantly, over one hundred years ago, the Vermont

---

2. § 302. Joint cases
 (a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a

debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

448

Supreme Court recognized what we now colloquially call a "non-traditional" family—an adult son and his mother—as a family for purposes of upholding the claim of the Sate's homestead exemption. *See Hyser v. Mansfield,* 72 Vt. 71, 47 A. 105 (1899).

Based upon these rulings and the absence of any conflict with legislative intent, this Court finds it is possible to have two family units, one consisting of a father and a child and the other consisting of a mother and some children, within a marriage, and concludes that the Vermont homestead exemption is available to each family unit within a joint bankruptcy case. Therefore, the Vermont homestead exemption may be utilized to exempt two homestead parcels, but only if the spouses were living apart prior to the filing of the bankruptcy case, each homestead is necessary to preserve a family unit, and there is no evidence of fraud.

 I am not persuaded by the Trustee's argument that creditors who held claims against the parties have rights equal to or superior to each Debtor's right to claim his or her homestead as exempt. Those are unsecured creditors whose rights are inferior to the homestead rights of the Debtors. The Trustee argues that the Searles Road Property is subject to the claims of the couple's joint unsecured creditors that arose before Mrs. Roberge declares the Searles Road Property as her homestead on September 10, 2002—the date she and Mr. Roberge separated. The flaw in this argument is that, for purposes of the bankruptcy, the right to claim a homestead exemption arises on the date of the bankruptcy filing. The facts clearly establish that Mrs. Roberge's homestead on that date was the Searles Road Property. Thus, her homestead claim to that property is superior to the claims of the couple's unsecured creditors or the Trustee.

## CONCLUSION

The Court finds no evidence of fraud in the parties' determination to live separate and apart, nor in their decision to file a joint bankruptcy case. The Court further finds the allowance of Mr. Roberge's exemption of the Eastern Avenue Property as his homestead comports with the literal language of 27 V.S.A. § 101 and promotes the statute's purpose of protecting Mr. Roberge's current family unit. Likewise, the Court finds that allowing Mrs. Roberge's exemption of the Searles Road Property as the dwelling in which she resides with her current family, notwithstanding Mr. Roberge's exemption of a different homestead within the same bankruptcy case, is not inconsistent with the spirit or language of 27 V.S.A. § 101 or the goals of that statute: protecting family units and construing exemption statutes liberally to provide remedial relief to debtors. In sum, I find that this determination is in harmony with the literal language of 27 V.S.A. § 101, is not demonstratively at odds with the intentions of the Vermont Legislature, and is consistent with the reason and spirit of the law.

The Court finds that the Debtors were living separate and apart, as two separate family units, as of the date of their bankruptcy filing, and that there is no evidence of fraud in the parties' claiming of two homestead exemptions. Each Debtor, as the head of a family unit, is entitled to claim a homestead exemption in the home where he or she resides with his or her family, pursuant to 27 V.S.A. § 101.

Accordingly, IT IS HEREBY ORDERED that the Trustee's objection to the Debtors' exemptions is OVERRULED.

**SO ORDERED.**